UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
PAMELA CARVEL,                      : 09 Civ. 0722 (LAK) (JCF)
                                    :
            Plaintiff,              :      REPORT AND
                                    :      RECOMMENDATION
      - against -                   :
                                    :
LEONARD ROSS, ROSS & MATZA, EVE     :
MARKEWICH, MARKEWICH & ROSENSTOCK,  :
BLANK ROME, FRANK STRENG, McCARTHY  :
FINGAR, JOEL ARNOU, ANTHONY         :
SCARPINO, JOHN/JANE DOE 1-20, DOE   :
CO. 1-20,                           :
            Defendants.             :
- - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

        Pamela Carvel brings this action against four attorneys, their
current and former firms, and the Westchester County Surrogate,
alleging that they acted, both alone and in concert, to violate her
constitutional rights and deprive her of monies that she is owed.
Ms. Carvel seeks substantial monetary damages, along with costs,
attorneys' fees, and declaratory relief.  Three separate groups of
defendants have filed motions to dismiss the plaintiff's claims
pursuant to Rules 8(a)(2), 9(b), 12(b)(1), and 12(b)(6) of the
Federal Rules of Civil Procedure.  For the reasons that follow, I
recommend that these motions be denied with respect to the
plaintiff's claim for breach of contract against Joel Aurnou, Frank
Streng, and McCarthy Fingar LLP; otherwise, I recommend that the
motions be granted and the remainder of the plaintiff's claims be

1

dismissed.

Background

This lawsuit is the latest sally in a long-fought battle between Ms. Carvel and various other individuals and entities for control of the assets left by Thomas Carvel, the late ice cream magnate, and his wife, Agnes. For the sake of brevity, I will summarize here only those facts most relevant to the instant proceeding. A more detailed history of Ms. Carvel's involvement with the estates of Thomas and Agnes Carvel can be found in Judge Michael H. Dolinger's Report and Recommendation of May 7, 2010, adopted at Thomas and Agnes Carvel Foundation v. Carvel, ___ F. Supp. 2d ___, No. 09 Civ. 5083, 2010 WL 3303777 (S.D.N.Y. Aug. 20, 2010).

A. Thomas and Agnes Carvel

Pamela Carvel is the niece of Thomas and Agnes Carvel. (Amended Complaint and Demand for Jury Trial ("Am. Compl."), ¶¶ 3, 45). In 1988, Thomas and Agnes Carvel executed mirror-image wills along with a contract binding the surviving spouse to place his or her assets in trust for life, with the remainder to be left to the Thomas and Agnes Carvel Foundation (the "Foundation"), a charitable organization. (Approved Judgment of the High Court of Justice, Chancery Division dated June 11, 2007 ("6/11/07 Judgment"), attached as Exh. F to Affidavit of Joseph J. Brophy dated Oct. 12,

2

2009 ("Brophy 10/12/09 Aff."), ¶ 4).  Thomas Carvel died in 1990,
and in April 1991 Agnes Carvel established the Agnes Carvel 1991
Trust (the "1991 Trust").  (Am. Compl., ¶ 46; The Agnes Carvel 1991
Trust Agreement dated April 22, 1991 ("1991 Trust Agreement"),
attached as Exh. V to Affidavit of Leonard M. Ross dated Sept. 27,
2010 ("Ross 9/27/10 Aff.")).  The 1991 Trust had two enumerated
purposes: first, to pay Agnes Carvel an income for the remainder of
her life; and second, to pay for the "funeral expenses, debts and
the expenses of administering [Agnes Carvel's] estate" upon her
death.  (1991 Trust Agreement at 1).  The remainder of the 1991
Trust was to be left either to the Foundation or to another
charitable organization chosen by its trustees.  (1991 Trust
Agreement at 2).

Following disputes over the proper disposal of Thomas Carvel's
estate, Agnes Carvel executed a new will in 1995, naming the
plaintiff, Pamela Carvel, as her personal representative and
leaving her residuary estate to a Florida charitable foundation co-
founded and led by Ms. Carvel.  (Last Will and Testament of Agnes
Carvel dated July 7, 1995 ("Agnes Carvel Will"), attached as Exh.
Q to Ross 9/27/10 Aff.; 6/11/07 Judgment, ¶ 6).  On August 4, 1998,
Agnes Carvel died in the United Kingdom.  (Am. Compl., ¶ 71).

B. <u>The Ross Defendants</u>

The plaintiff first retained Leonard Ross, principal of the

3

firm of Ross & Matza (collectively, the "Ross defendants"), in 1990 or 1991.  (Am. Compl., ¶ 32; Supplemental Pleading for a More Definite Statement ("Supp. Pleading"), ¶ 14; Memorandum of Law of Leonard Ross and Ross & Matza in Support of Their Motion to Dismiss the Amended Complaint ("Ross Memo.") at 8).  At that time, the Ross defendants represented Ms. Carvel in estate matters arising out of the death of Thomas Carvel.  (Am. Compl., ¶ 32; Ross Memo. at 8). Ms. Carvel states that she later retained the Ross defendants to represent her, both individually and on Agnes Carvel's behalf, in charity fraud investigations and estate litigation.  (Supp. Pleading, ¶¶ 14, 81, 82, 85, 87).  The Ross defendants allege that their representation of the plaintiff terminated entirely in March of 1999, when Mr. Ross was appointed the New York ancillary administrator of Agnes Carvel's estate.  (Ross Memo. at 10; Supplemental Memorandum of Law of Leonard Ross and Ross & Matza in Support of Their Motion to Dismiss the Amended Complaint and Supplemental Pleading for More Definite Statement at 4).  However, Ms. Carvel claims that their representation continued in all matters through at least July of 2010, because "Ross and Ross & Matza never have withdrawn from representation, or given notice of the intention to withdraw."  (Supp. Pleading, ¶ 17).

    C. <u>The Blank Rome Defendants</u>

    Ms. Carvel claims to have retained the firm of Blank Rome LLP

("Blank Rome") to represent her on multiple matters in various locations over the past ten years, including "in Florida Trust litigation, Delaware trust litigation, New York estate and trust litigation, and New York charity fraud litigation." (Am. Compl., ¶ 34).  With respect to the litigation that underlies this complaint -- the adjudication of Agnes Carvel's estate in Westchester Surrogate's Court -- the plaintiff states that she retained Eve Markewich, Peter Valente, and Herbert Bockstein of Blank Rome (together with Markewich and Rosenstock LLP, the "Blank Rome defendants") to "represent the ancillary administration" of Agnes Carvel's estate in New York.  (Plaintiff Pamela Carvel's Request for Judicial Notice ("Carvel 1/7/11 Request"), ¶ 21; Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. G to Declaration of Philip Touitou dated Nov. 24, 2009 ("Touitou 11/24/09 Decl."), at 1).  However, the retainer letter signed by Ms. Carvel clearly states that Blank Rome was "retained by Leonard Ross" in his capacity as the New York ancillary administrator of Agnes Carvel's estate; another letter sent the same day to Mr. Ross by Mr. Camerik confirmed Blank Rome's representation of Mr. Ross alone.  (Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. B to Carvel 1/7/11 Request; Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. G to Touitou 11/24/09 Decl.).  The letter retainer signed by the plaintiff did require her to

5

"personally guarantee and agree to be personally liable for" Blank
Rome's fees and costs in connection with its representation of Mr.
Ross, and it further stated the Blank Rome defendants' intention to
"dutifully apply to any appropriate Court to seek reimbursement to
the Estate, you, or any other appropriate party, of the fees and
costs we are paid."  (Letter of Howard M. Camerik dated Feb. 22,
2000, attached as Exh. B to Carvel 1/7/11 Request, at 1).

Ms. Carvel notes that in February of 2005, Ms. Markewich
published an article in the New York Law Journal entitled, "Getting
Grounded in Ethical Dilemmas," in which she detailed "[t]he
unethical, if not illegal, tactics used by Plaintiff's adversaries
against" Agnes Carvel during the last years of her life.  (Am.
Compl., ¶ 73; Eve Rachel Markewich, "Getting Grounded On Ethical
Dilemmas," NYLJ, Feb. 14, 2005, attached as part of Exh. D to
Touitou 11/24/09 Decl.).  Five months later, the plaintiff sent Ms.
Markewich an angry letter, accusing her of acting against the
interests of Agnes Carvel's estate and committing related ethical
violations.  (Letter of Pamela Carvel dated July 11, 2005, attached
as Exh. S to Touitou 11/24/09 Decl.).  Ms. Markewich responded by
letter, defending her representation of the estate's interests and
clarifying that Blank Rome was "retained to represent Leonard Ross,
as Ancillary Administrator c.t.a. of the Estate of Agnes Carvel"
not Ms. Carvel, and therefore that she was not obliged to proceed

as Ms. Carvel directed.  (Letter of Eve Rachel Markewich dated July 20, 2005, attached as Exh. H to Touitou 11/24/09 Decl.).  When Ms. Markewich left Blank Rome in 2007 and established the firm of Markewich and Rosenstock LLP ("M&R"), Mr. Ross retained M&R to represent him in his capacity as the New York ancillary administrator of Agnes Carvel's estate.  (Ross Memo. at 11; Retainer Agreement for Estate of Agnes Carvel dated April 18, 2007, attached as Exh. E to Affidavit of Leonard M. Ross dated Oct. 8, 2009 ("Ross 10/8/09 Aff.")).  Ms. Carvel professes confusion regarding her relationship with M&R, stating that "[a]t some unknown date, Markewich & Rosenstock appear to have acquired financial interest in and control over Carvel litigation from Blank Rome," thus establishing a relationship with Ms. Carvel.  (Supp. Pleading, ¶ 23).  Ms. Carvel maintains that Blank Rome continues to represent her and that none of the Blank Rome defendants ever withdrew from representation of her.  (Supp. Pleading, ¶¶ 22, 24).

        D. The McCarthy Fingar Defendants

    Ms. Carvel hired Joel Aurnou in 1999 or 2000 to seek reimbursement of legal fees she had advanced in connection with litigation related to Thomas and Agnes Carvel's estates.  (Am. Compl., ¶ 37; Supp. Pleading, ¶¶ 29-30).  Shortly after she retained him, Mr. Aurnou affiliated with the firm of McCarthy Fingar LLP ("McCarthy Fingar"), which began representing Ms. Carvel

in 2000.  (Am. Compl., ¶ 38; Supp. Pleading, ¶ 25; Brophy 10/12/09 Aff., ¶ 9; Letter of Philip T. Temple dated Oct. 13, 2000, attached as Exh. F to Declaration of Philip Touitou dated Sept. 30, 2010 ("Touitou 9/30/10 Aff.")).   McCarthy Fingar and Frank Streng (together with Joel Aurnou, collectively, the "McCarthy Fingar defendants"), one of its attorneys, represented Ms. Carvel in proceedings related to both Thomas and Agnes Carvel's estates in New York.  (Supp. Pleading, ¶¶ 10(h), 182; Brophy 10/12/09 Aff., ¶ 9).   The firm was awarded at least $900,000 in fees out of the estates for their work on these representations.  (Decision dated June 30, 2003 ("6/30/03 Decision"), attached as Exh. L to Touitou 11/24/09 Decl., at 7; Order dated July 30, 2003 ("7/30/03 Order"), attached as Exh. M to Touitou 11/24/09 Decl., at 3; Decision dated Dec. 29, 2004 ("12/29/04 Decision"), attached as Exh. N to Touitou 11/24/09 Decl., at 4).

On June 30, 2005, Ms. Carvel sent Mr. Streng a letter in which she accused him of acting against her interests and those of Agnes Carvel's estate.  (Letter of Pamela Carvel dated June 30, 2005, attached as Exh. I to Affidavit of Joseph J. Brophy in Further Support of Motion to Dismiss and in Response to Supplemental Pleading dated Sept. 30, 2010 ("Brophy 9/30/10 Aff.")).   She followed that with a second letter on July 15, 2005, in which she asserted that Mr. Streng had "acquired loyalty to others,"

8

including Ms. Markewich and Mr. Ross, at the expense of the interests of Agnes Carvel's estate and of Ms. Carvel as its executor; she also accused Mr. Streng of failing to seek reimbursement of monies advanced to him and to Blank Rome by Ms. Carvel for legal fees. (Letter of Pamela Carvel dated July 15, 2005, attached as Exh. J to Brophy 9/30/10 Aff.). Mr. Streng responded by letter on July 15, 2005, defending his and his firm's representation of Ms. Carvel and Agnes Carvel's estate, and terminating McCarthy Fingar's representation of Ms. Carvel in the proceedings related to Agnes Carvel's estate. (Letter of Frank W. Streng dated July 15, 2005, attached as Exh. K to Brophy 9/30/10 Aff.). In a decision dated March 3, 2006, Justice Anthony A. Scarpino, Jr., of Westchester County Surrogate's Court, granted Mr. Streng's motion to withdraw McCarthy Fingar as counsel to Ms. Carvel in the proceedings related to Thomas Carvel's estate. (Decision dated Dec. 6, 2005, attached as part of Exh. E to Brophy 10/12/09 Aff.; Order dated March 3, 2006, attached as part of Exh. E to Brophy 10/12/09 Aff.). Although the plaintiff admits that Mr. Streng and McCarthy Fingar withdrew from representation of her in proceedings related to Thomas Carvel's estate, she maintains that they did not withdraw from representation in proceedings related to Agnes Carvel's estate and so continued to have an attorney-client relationship with her through at least July of 2010. (Supp.

9

Pleading, ¶ 28).  Ms. Carvel also maintains that Joel Aurnou never withdrew from representation of her in any matter.  (Supp. Pleading, ¶ 34).

E. Justice Anthony Scarpino

Justice Scarpino has been the Surrogate of Westchester County since 2001 and has presided over proceedings related to both Thomas and Agnes Carvel's estates.  (Am. Compl., ¶ 39; see also, e.g., Decision and Order dated Dec. 24, 2001, attached as Exh. J to Toitou 11/24/09 Decl.; 6/30/03 Decision).  He was named as a defendant in Ms. Carvel's original Complaint in this action, which was filed on January 26, 2009.  (Complaint).  On May 28, 2009, the Complaint was dismissed with respect to Justice Scarpino due to the plaintiff's failure to serve him or to show cause for her failure. (Order dated May 28, 2009).  By subsequent order, the plaintiff was prohibited from serving Justice Scarpino with further process in this action.  (Order dated Oct. 16, 2009).  As a result, Justice Scarpino is no longer a defendant in this lawsuit and any claims asserted by Ms. Carvel against him should be dismissed with prejudice.[1]

---

[1] Ms. Carvel's claims against Justice Scarpino should be barred in any case by the doctrine of absolute judicial immunity. See Carvel v. New York, 369 Fed. Appx. 269, 270 (2d Cir. 2010).

F. <u>Procedural History</u>

    1. <u>Westchester Surrogate's Court Proceedings</u>

The allegations in this action focus primarily on proceedings conducted by Justice Scarpino during the administration of Agnes Carvel's estate in New York.  Those proceedings began immediately following Agnes Carvel's death in 1998, when the Foundation filed suit in Westchester Surrogate's Court to enforce the reciprocal will contract signed by Thomas and Agnes Carvel.  (6/11/07 Judgment, ¶ 9).  A contest then ensued between the Foundation and Ms. Carvel, who had submitted Agnes Carvel's 1995 will for probate in the United Kingdom.  (6/11/07 Judgment, ¶ 7).  Following a trial, Juustice Scarpino invalidated the 1995 will as violative of the contract between Agnes and Thomas Carvel and named the Foundation as the proper remainder beneficiary of Agnes Carvel's estate.  <u>In re The Thomas and Agnes Carvel Foundation</u>, 8 Misc. 3d 1025(4), 806 N.Y.S.2d 449 (West. Sur. Ct. 2002).

Significant legal fees were incurred by all parties involved in the Westchester Surrogate's Court proceedings.  In October and December of 2001, Mr. Ross, Blank Rome, and representatives of the 1991 Trust and the Foundation entered into stipulations for the ongoing payment of administrative costs to Mr. Ross as the New York ancillary administrator of Agnes Carvel's estate and attorneys' fees to Blank Rome as Mr. Ross' attorney.  (Transcript of

Proceedings in Westchester County Surrogate's Court dated Oct. 23, 2001, attached as Exh. E to Carvel 1/7/11 Request, at 5-7; Stipulation dated Dec. 17, 2001 (the "2001 Stipulation"), attached as Exh. G to Touitou 9/30/10 Aff.).  These payments were to be made out of the 1991 Trust, which was intended to cover the expenses of administering Agnes Carvel's estate, and were subject to the approval of the Foundation, the 1991 Trust's remainder beneficiary. (1991 Trust Agreement at 1, 2; 2001 Stipulation at 2-3).

In 2003, Justice Scarpino awarded McCarthy Fingar $400,000 in legal fees out of the 1991 Trust as payment for its representation of Ms. Carvel in proceedings related to Agnes Carvel's estate. (6/30/03 Decision at 7; 7/30/03 Order at 3).  However, in 2004 Justice Scarpino denied an application made by Ms. Carvel for the advance payment of legal fees to her out of Agnes Carvel's New York ancillary estate so that Ms. Carvel could pursue litigation in Delaware on behalf of Agnes Carvel's United Kingdom estate. (Decision dated June 30, 2004 ("6/30/04 Decision"), attached as Exh. F to Ross 10/8/09 Aff., at 1).  Justice Scarpino found, among other reasons, that Ms. Carvel's request was premature due to a 2002 order in which he had frozen distribution of the New York ancillary estate's assets until its final settlement.  (6/30/04 Decision at 3).  That final settlement was made in 2010 following a second trial and significant motion practice.  (Decision After

Trial dated June 30, 2010 ("6/30/10 Decision"), attached as Exh. S
to Ross 9/27/10 Aff., at 5, 17).  Although Ms. Carvel had initially
challenged Mr. Ross' final accounting and petitioned for the
reimbursement of $167,270 in legal fees that she had advanced to
Blank Rome on Mr. Ross' behalf, she later abandoned those claims by
failing both to show up at the trial and to provide Mr. Ross with
required documentation.  (6/30/10 Decision at 5-6, 10-11).

    2. <u>The Instant Action</u>

    The complaint in this action was filed on January 26, 2009.
Due to Ms. Carvel's failure to perfect service on Mr. Ross, Ms.
Markewich, and Justice Scarpino, the action was dismissed as to
those three defendants on May 28, 2009.  (Order dated May 28,
2009).  Ms. Carvel subsequently served all of the defendants except
Justice Scarpino with an Amended Complaint, which she had filed on
May 24, 2009.  (Am. Compl.; Order dated Oct. 16, 2009).  The Ross
defendants, the Blank Rome defendants, and the McCarthy Fingar
defendants each filed a motion to dismiss the Amended Complaint.
(Notice of Motion dated Oct. 8, 2009; Notice of Motion dated Oct.
13, 2009; Notice of Motion dated Nov. 24, 2009).  The defendants
raised various defenses, including res judicata, lack of standing,
and expiration of the statute of limitations, and they ask that the
complaint to be dismissed pursuant to Rules 8(a)(2), 9(b),
12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

(Ross Memo. at 2; Memorandum of Law in Support of Defendants Eve Rachel Markewich, Blank Rome LLP and Markewich & Rosenstock LLP's Motion to Dismiss the Complaint ("Blank Rome Memo.") at i; Defendants' (McCarthy Fingar LLP, Frank Streng, and Joel Aurnou) Memorandum of Law in Support of Motion to Dismiss ("McCarthy Fingar Memo.") at i-ii).

I held a hearing on March 17, 2010, to determine whether there was an appropriate basis for diversity jurisdiction in this action; the outcome of that inquiry is discussed below. (Order dated March 3, 2010; Hearing Transcript dated March 17, 2010 ("Tr.")). Following the hearing, the plaintiff filed a motion for an order dismissing Blank Rome and adding Mr. Bockstein and Mr. Valente as defendants. (Plaintiff's Motion to Dismiss and Join Defendants). I denied her motion "without prejudice to being resubmitted together with a copy of the proposed amended complaint" and subsequently ordered her to file a supplemental pleading. (Order dated April 27, 2010; Order dated July 2, 2010). Ms. Carvel filed a supplemental pleading on July 20, 2010, retaining Blank Rome as a defendant and adding Mr. Bockstein and Mr. Valente. (Supp. Pleading at 1).

Discussion

   A. <u>Legal Standards</u>

     1. <u>Rule 8(a)(2)</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading must be sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009). However, "Rule 8(a) sets a lower bar than Rule 12(b)(6) or Rule 9(b)," <u>In re Allou Distributors, Inc.</u>, 395 B.R. 246, 258 (Bankr. E.D.N.Y. 2008), and dismissal under Rule 8(a) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised," <u>Shomo v. New York</u>, 374 Fed. Appx. 180, 182 (2d Cir. 2010) (quoting <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988)). In applying Rule 8(a) to a <u>pro se</u> complaint, the pleading must be construed liberally, <u>id.</u> at 183, and with sufficient sensitivity "so as to do justice" as required

by Rule 8(e) of the Federal Rules of Civil Procedure, Fed. R. Civ.
P. 8(e).

    2. <u>Rule 9(b)</u>

Rule 9(b) of the Federal Rules of Civil Procedure establishes
a heightened pleading standard for complaints alleging fraud or
mistake; such pleadings must "state with particularity the
circumstances constituting" the violation. Fed. R. Civ. P. 9(b).
To meet this standard, a complaint must "'(1) specify the
statements that the plaintiff contends were fraudulent, (2)
identify the speaker, (3) state where and when the statements were
made, and (4) explain why the statements were fraudulent.'" <u>Wood
ex rel. United States v. Applied Research Associates, Inc.</u>, 328
Fed. Appx. 744, 747 (2d Cir. 2009) (quoting <u>Shields v. Citytrust
Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore,
"'conclusory allegations that [a] defendant's conduct was
fraudulent or deceptive are not enough.'" <u>CreditSights, Inc. v.
Ciasullo</u>, No. 05 Civ. 9345, 2008 WL 4185737, at *9 (S.D.N.Y. Sept.
5, 2008) (quoting <u>Decker v. Massey-Ferguson, Ltd.</u>, 681 F.2d 111,
114 (2d Cir. 1982)). Although <u>pro se</u> pleadings are construed
liberally, <u>pro se</u> petitioners are nevertheless required to comport
with Rule 9(b)'s particularity requirements when alleging fraud or
mistake. <u>See, e.g.</u>, <u>Rafter v. Liddle</u>, 704 F. Supp. 2d 370, 377-78
(S.D.N.Y. 2010) ("Given that [the plaintiff] is proceeding <u>pro se</u>,

the Court considers her pleadings leniently, but nonetheless finds that [she] has not alleged [her claims] with any particularity."); Houraney v. Burton & Associates, P.C., 701 F. Supp. 2d 258, 262-63 (E.D.N.Y. 2010) (dismissing pro se complaint for failure to meet 9(b) standard).

### 3. Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure requires that a claim be dismissed for lack of subject matter jurisdiction "'when the district court lacks the statutory or constitutional power to adjudicate it.'" Qader v. Cohen & Slamowitz, No. 10 Civ. 1664, 2011 WL 102752, at *2 (S.D.N.Y. Jan. 10, 2011) (quoting Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)).  Subject matter jurisdiction is a "'threshold inquiry'" that must be addressed before reaching the merits of a claim.  Dominguez ex rel. Dominguez v. Verna, No. 10 Civ. 4296, 2010 WL 4942225, at *3 (S.D.N.Y. Dec. 3, 2010) (quoting Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008), vacated on other grounds, 585 F.3d 559 (2d Cir. 2009)).  The party asserting subject matter jurisdiction bears the burden of proving it by a preponderance of the evidence.  Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

There are three bases for federal subject matter jurisdiction:

(1) arising under jurisdiction, for civil actions "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331; (2) diversity jurisdiction, for civil actions arising under state law between citizens of different states where the amount in controversy exceeds $75,000, 28 U.S.C. § 1332(a)(1); and (3) supplemental jurisdiction, for civil actions arising under state law that are nonetheless part of the same case or controversy as a properly filed claim over which the court has original jurisdiction, 28 U.S.C. § 1367(a).

For purposes of diversity jurisdiction, the citizenship of an individual is determined by her domicile; an individual can have only one domicile, which in turn is defined as the location of her "'true fixed home . . . to which, whenever [she] is absent, [she] has the intention of returning.'" Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000) (quoting Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998)). In contrast, the citizenship of a partnership includes every state in which any member of the partnership is a citizen. See Herrick Co. v. SCS Communications, Inc., 251 F.3d 315, 322 (2d Cir. 2001) (citing Carden v. Arkoma Associates, 494 U.S. 185, 192-95 (1990)). To sustain diversity jurisdiction, complete diversity between opposing parties is required. See, e.g., In re Methyl Tertiary Butyl Ether Products Liability Litigation, 674 F. Supp. 2d 494, 500 (S.D.N.Y. 2009)

18

(citing <u>State Farm Fire and Casualty Co. v. Tashire</u>, 386 U.S. 523, 530-31 (1967)).  Where a non-essential, non-diverse party stands in the way of complete diversity, the court can dismiss that party so as to cure the jurisdictional defect.  <u>See</u> <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 572-73 (2004).

　　　　4. <u>Rule 12(b)(6)</u>

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 90, 94 (2007) (per curiam); <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 110-11 (2d Cir. 2010).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action."  <u>Iqbal</u>, 129 S. Ct. at 1949-50 (citing <u>Twombly</u>, 550 U.S. at 555).  Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the minimum standard.  <u>Id.</u> at 1950.  "The task of the court in ruling on a Rule 12(b)(6) motion is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  <u>In re Initial Public Offering Securities Litigation</u>, 383 F. Supp. 2d 566,

574 (S.D.N.Y. 2005) (quoting <u>Levitt v. Bear Stearns & Co.</u>, 340 F.3d 94, 101 (2d Cir. 2003)).

<u>Pro</u> <u>se</u> complaints are held to less stringent standards than those drafted by lawyers.  <u>Erickson</u>, 551 U.S. at 94; <u>see also</u> <u>McKeown v. New York State Commission on Judicial Conduct</u>, 377 Fed. Appx. 121, 122 (2d Cir. 2010).  In fact, pleadings of a <u>pro</u> <u>se</u> party should be read "'to raise the strongest arguments that they suggest.'"  <u>Kevilly v. New York</u>, No. 09-4635, 2010 WL 5156766, at *1 (2d Cir. Dec. 21, 2010) (quoting <u>Brownell v. Krom</u>, 446 F.3d 305, 310 (2d Cir. 2006)).  Even after <u>Iqbal</u>, which imposed heightened pleading standards for all complaints, <u>pro</u> <u>se</u> complaints are to be liberally construed.  <u>See</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009).  Dismissal of a <u>pro</u> <u>se</u> complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements.  <u>See, e.g.</u>, <u>Paul v. Bailey</u>, No. 09 Civ. 5784, 2010 WL 3292673, at *4 (S.D.N.Y. July 21, 2010) (citing <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 65 (2d Cir. 1997)).

### 5. <u>Conversion into Motion for Summary Judgment</u>

The plaintiff asserts that, by relying on documents outside of the pleadings, the defendants have converted their motions to dismiss into motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Plaintiff Pamela Carvel's Affidavit on Personal Knowledge & Memorandum of Law in Opposition

to Defendants Leonard Ross/Ross and Matza's Motion to Dismiss ("Pl. Ross Opp. Memo."), ¶¶ 8-10; Plaintiff Pamela Carvel's Memorandum of Law in Opposition to Defendants Eve Markewich, Markewich & Rosenstock, Blank Rome Motion to Dismiss ("Pl. Blank Rome Opp. Memo."), ¶ 2; Plaintiff Pamela Carvel's Affidavit on Personal Knowledge & Memorandum of Law in Opposition to Defendants Frank Streng, McCarthy Fingar LLP, Joel Aurnou's Motion to Dismiss ("Pl. McCarthy Fingar Opp. Memo."), ¶¶ 9-10).

This characterization is incorrect.  On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-54 (2d Cir. 2002).  However, the court may also consider documents "'integral to the complaint'" or those that were necessarily relied on by the plaintiff in drafting the complaint.  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (quoting Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)).  Such documents are particularly relevant where the complaint alleges fraud.  Id.  Furthermore, federal courts are empowered to take judicial notice of facts "not subject to reasonable dispute," including public records and the decisions of other courts.  Fed. R. Evid. 201(b); see United States v. Miller, 626 F.3d 682, 687 n.3 (2d Cir. 2010); Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.,

21

596 F.3d 112, 124 n.12 (2d Cir. 2010).  However, a court can only take judicial notice of a decision filed by another court "to establish the existence of the opinion, not for the truth of the facts asserted in the opinion."  Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

Ms. Carvel does not challenge the authenticity of any of the documents submitted by the defendants; indeed, she has attached a number of the same documents to her own submissions and to her requests for judicial notice. (E.g., Stipulation, attached as Exh. G to Touitou 9/30/10 Aff. and Exh. F to Carvel 1/7/11 Request). Moreover, the documents submitted by the parties fall within the enumerated categories of documents that a court can properly consider when deciding a motion to dismiss.  The majority of the submissions are judicial opinions from other courts, including the Westchester Surrogate's Court, the Florida Fourth District Court of Appeal, the United States District Court for the District of Delaware, and the United Kingdom's High Court of Justice. (Decision and Order dated Feb. 27, 2009, attached as Exh. R to Ross 9/27/10 Aff.; Decision of the Fourth District Court of Appeal of the State of Florida dated Oct. 11, 2006, attached as Exh. D to Carvel 1/7/11 Request; Memorandum Opinion dated July 17, 2008, attached as Exh. H of Ross 10/8/09 Aff.; 6/11/07 Judgment).  While

all of these decisions are subject to judicial notice, the contents of some of them underlie the plaintiff's allegations of bribery and conspiracy and thus are also integral to her complaint. (Am. Compl., ¶¶ 148, 153; Supp. Pleading, ¶ 40(e); Reply for Supplemental Pleading for More Definite Statement ("Supp. Pleading Reply"), ¶ 10). Other submissions are documents already in the public record, including Agnes Carvel's 1995 will, which was submitted to probate in the United Kingdom, and documents related to the 1991 Trust. (Agnes Carvel Will; 1991 Trust Agreement). Finally, both the defendants and the plaintiff have submitted various letters exchanged among the parties. (E.g., Letter of Howard M. Camerik dated March 13, 2000, attached as Exh. C to Carvel 1/7/11 Request; Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. D to Ross 10/8/09 Aff.). These letters are properly considered here because they establish the dates on which the attorney-client relationships between Ms. Carvel and the defendants were established and terminated and thus are integral to the allegations of legal malpractice and breach of contract, among others, contained in the plaintiff's complaint.

B. Subject Matter Jurisdiction

The plaintiff alleges a variety of state and federal causes of action, grounding jurisdiction for her state law claims in diversity. (Am. Compl., ¶ 25). She states that she is a citizen

of Florida while "[a]ll named Defendants are citizens of New York."
(Am. Compl., ¶ 25).   In their moving papers, the Blank Rome
defendants challenge the plaintiff's assertion of diversity
jurisdiction, suggesting that although Ms. Carvel was a United
States citizen and had claimed a Florida residence, she was
actually domiciled in the United Kingdom and therefore could not
properly bring a diversity action against a United States citizen
defendant.   (Reply Memorandum of Law in Further Support of
Defendants Eve Rachel Markewich, Blank Rome LLP and Markewich and
Rosenstock LLP's Motion to Dismiss the Complaint at 6-7); see also
Johnson v. Smithsonian Institution, 4 Fed. Appx. 69, 71 (2d Cir.
2001) ("'[A] suit by or against United States citizens domiciled
abroad may not be premised on diversity.'" (quoting Cresswell v.
Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990).   On March 17,
2010, I held a hearing on this matter at which Ms. Carvel and Mr.
Ross testified.   (Order dated March 3, 2010; Tr. at 3-55).

On the basis of the evidence presented at the hearing, along
with documents submitted by the parties, I recommend the Court find
that Ms. Carvel is domiciled in Florida and therefore a citizen of
Florida for diversity purposes.   Ms. Carvel states that she has
lived in Florida since 1970 or 1980 -- in Hollywood, Florida until
1995, and since then in a home she purchased in Fort Lauderdale,
Florida.   (Tr. at 4, 5; Plaintiff Pamela Carvel's Affirmation on

24

Personal Knowledge Evidenced by Certified Business Records in the
Public Record dated March 12, 2010 ("Carvel 3/12/10 Aff."), ¶¶ 7-9,
13-14; Warranty Deed dated June 22, 1995, attached as Exh. D to
Carvel 3/12/10 Aff.).  She testified that her "only domicile is
Florida" and that she has never resided in the United Kingdom.
(Tr. at 7, 10).  She is registered to vote in Florida and voted
there in 2009, carries a Florida driver's license and a United
States passport, files her tax returns from her home in Fort
Lauderdale, and maintains her primary bank account in Fort
Lauderdale.  (Tr. at 5-6, 16, 17; Voter Information Card, attached
as Exh. E to Carvel 3/12/10 Aff.; Florida Driver License, attached
as Exh. G to Carvel 3/12/10 Aff.; United States of America Passport
Card, attached as Exh. H to Carvel 3/12/10 Aff.).  Although the
defendants rightly note that the plaintiff uses addresses in the
United Kingdom and Delaware in her litigation documents, Ms. Carvel
explained that she uses these addresses only for mail forwarding
purposes and does not reside or own residences in either of these
locations.  (Tr. at 6-7, 12-13, 31).  Ms. Carvel claims not to
maintain a mailbox at her home in Florida; instead, she receives
mail through mail forwarding services located in Delaware and the
United Kingdom because she has been unable to find a reliable
service in Florida.  (Tr. at 12-13).  While Ms. Carvel admitted to
regularly spending time in New Jersey with her mother, she states

that she does not own any property there and does not reside there.
(Tr. at 15-16, 34-36).  She also claimed not to have lived in New
York City since the 1960s or 1970s, despite being a stock holder in
five co-operative apartments located there; the defendants did not
challenge this contention.  (Tr. at 27-31).  Ms. Carvel has thus
sustained her burden of demonstrating that she is a citizen of
Florida for diversity purposes.

Blank Rome is also a citizen of Florida.  Michael Leeds, a
general partner at Blank Rome since 2001, states that he has lived
and worked in Boca Raton, Florida, since 1997.  (Affirmation of
Michael H. Leeds dated March 26, 2010 ("Leeds Aff."), ¶¶ 1, 4, 9;
Blank Rome LLP Amended and Restated Partnership Agreement dated
Nov. 3, 2001, attached as Exh. 1 to Leeds Aff.).  His domicile and
citizenship are therefore also located in Florida.  (Leeds Aff., ¶
9).  Furthermore, Blank Rome itself is registered as a limited
partnership with the Florida Department of State and maintains an
office in Boca Raton, Florida, in which Mr. Leeds works.  (Leeds
Aff., ¶¶ 4-5; Statement of Registration-Domestic Registered Limited
Liability Partnership  dated Jan. 2, 1998, attached as Exh. 2 to
Leeds Aff.; Partnership Registration Statement dated April 7, 2000,
attached as part of Exh. 5 to Leeds Aff.).

Because Mr. Leeds is a citizen of Florida, Blank Rome is also
a citizen of Florida and therefore is not diverse from Ms. Carvel

for jurisdictional purposes.  As a result, Blank Rome must be dismissed from the case to preserve diversity jurisdiction as to the remaining defendants.  Although it would be possible for the Court to retain jurisdiction over the plaintiff's action even in the absence of complete diversity through the exercise of arising under and supplemental jurisdiction, this would not be appropriate given my recommendation below that all of Ms. Carvel's federal claims be dismissed as to all of the defendants.  See Jenkins v. St. Luke's-Roosevelt Hospital Center, No. 09 Civ. 12, 2009 WL 3682458, at *11 (S.D.N.Y. Oct. 29, 2009) ("'Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" (alteration in original) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966))); see also 28 U.S.C. § 1367(a), (c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

C. The Merits

I will address the plaintiff's remaining claims in four groups: (1) claims that are not causes of action or do not carry a private right of action, (2) common law claims, (3) federal law

claims, and (4) state statutory claims.[2]

    1. <u>Invalid Claims</u>

Among her allegations, the plaintiff claims a number of violations that either are not causes of action or are based on statutes that do not provide for a private right of action. I therefore recommend that these claims should be dismissed.

    a. <u>Not a Cause of Action</u>

In her pleadings, Ms. Carvel asserts claims for harassment, intimidation, and "failure to assert a claim for elder abuse." (Am. Compl. at 53 & ¶¶ 178, 180-81; Supp. Pleading, ¶ 47). None of these are cognizable as civil causes of action under federal or New York law. See <u>Pandozy v. Tobey</u>, 335 Fed. Appx. 89, 91 (2d Cir. 2009) ("New York law does not recognize a claim for civil harassment."); <u>Bradt v. White</u>, 190 Misc. 2d 526, 535, 740 N.Y.S.2d 777, 784 (Greene Sup. Ct. 2002) ("[T]he Court notes that there is no common law cause of action for harassment, annoyance, [or] intimidation." (internal citation omitted)); <u>Gilbert v. Gilbert</u>,

---

[2] I note that the plaintiff does not organize her causes of action in this manner but instead groups them under six headings: (1) "Civil Conspiracy for Deprivation of Rights"; (2) "Conspiracy for Deprivation of Rights Secured by U.S. Constitution"; (3) "Reprehensibility Misconduct by Lawyers"; (4) "Bad Faith, Breaches of Contract, Unjust Enrichment"; (5) "Breach of Fiduciary Duty, Duty of Loyalty, Duty of Care"; and (6) "Harassment; Intimidation; Extortion." (Am. Compl. at 42, 45, 47, 49, 52, 53). However, her allegations have a wider scope than these six headings allow and thus are more appropriately addressed on an individual basis.

No. 02 Civ. 3728, 2003 WL 22790940, at *2 (S.D.N.Y. Nov. 25, 2003) ("[N]either federal nor New York law recognizes a cause of action for 'elder abuse.'").  Therefore, I recommend that these claims be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

b. No Private Right of Action

The plaintiff also asserts a number of causes of action for which there are no private rights of action, including violations of 18 U.S.C. § 4 (misprision of felony), 18 U.S.C. § 2382 (misprision of treason), 18 U.S.C. § 1346 (honest services fraud), and New York Penal Law § 210.10 (perjury); extortion; tax fraud; and violations of federal and state attorney disciplinary rules. (Am. Compl. at 53 & ¶¶ 75, 96-97, 138, 175, 176, 178; Supp. Pleading, ¶¶ 39(d), 40(e), 49-76, 118, 130; Pl. Ross Opp. Memo., ¶ 88; Pl. Blank Rome Opp. Memo., ¶¶ 14, 18, 86, 106; Pl. McCarthy Fingar Opp. Memo., ¶¶ 18, 21); see Chen ex rel. V.D. v. Lester, 364 Fed. Appx. 531, 536 (11th Cir. 2010) (affirming dismissal of civil suit under 18 U.S.C. § 2382 because statute does not provide a private right of action); In re Phillips, 510 F.2d 126, 126 (2d Cir. 1975) (holding that private citizens lack standing to participate in attorney disciplinary proceedings); Carvel v. Franchise Stores Realty Corp., No. 08 Civ. 8938, 2009 WL 4333652, at *8 (S.D.N.Y. Dec. 1, 2009) ("The federal statute for misprision

of felony is a criminal statute that does not create a private cause of action."); Abrahams v. Incorporated Village of Hempstead, No. 08 CV 2584, 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009) (dismissing civil suit for perjury because "there is no private right of action for perjury" under New York law); Williams v. Jurow, No. 05 Civ. 6949, 2007 WL 5463418, at *13 (S.D.N.Y. June 29, 2007) ("[T]here is no private right of action under the federal extortion statute."), report and recommendation adopted in relevant part, 2008 WL 4054421 (S.D.N.Y. Aug. 28, 2008); Seabury v. City of New York, No. 06 CV 1477, 2006 WL 1367396, at *5 (E.D.N.Y. May 18, 2006) ("Private citizens cannot enforce the provisions of the Tax Code."); Gaind v. Pierot, No. 04 Civ. 9407, 2006 WL 846268, at *4-5 (S.D.N.Y. March 31, 2006) (noting that 18 U.S.C. § 1346 does not have private right of action), aff'd, 282 Fed. Appx. 946 (2d Cir. 2008); Minnelli v. Soumayah, 41 A.D.3d 388, 389, 839 N.Y.S.2d 727, 728 (1st Dep't 2007) ("[E]xtortion and attempted extortion are criminal offenses that do not imply a private right of action." (internal citation omitted)).

It is axiomatic that "'the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'" Riegel Textile Corp. v. Celanese Corp., 649 F.2d 894, 897 (2d Cir. 1981) (quoting Cannon v. University of Chicago, 441 U.S. 677, 688

30

(1979)).  It follows that where courts have already determined that a private right of action does not exist for a particular law, an individual cannot bring a civil suit for monetary damages based on a violation of that law.  Therefore, Ms. Carvel's attempt to civilly enforce the above-mentioned statutes fails, and these claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

>    2. Common Law Claims

The plaintiff alleges twelve common law causes of action in her Amended Complaint: (1) legal malpractice, (2) breach of fiduciary duty, (3) breach of contract, (4) common law fraud, (5) fraudulent and negligent misrepresentation, (6) conversion, (7) unjust enrichment, (8) attorney liability in negligence to third parties, (9) aiding breach of fiduciary duty and conversion, (10) tortious interference with business relations, (11) fraudulent conveyance, and (12) intentional infliction of emotional distress. I will discuss each of them in turn.

>    a. Legal Malpractice

There are three elements to a claim of legal malpractice in New York: "'(1) the negligence of the attorney; (2) that the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages.'" Baker v. Dorfman, 239 F.3d 415, 420 (2d Cir. 2000) (quoting Davis v. Klein, 224 A.D.2d 196, 198-99, 637

N.Y.S.2d 137, 139 (1st Dep't 1996), aff'd, 88 N.Y.2d 1008, 648
N.Y.S.2d 871 (1996)).  There is a three-year statute of limitations
for legal malpractice, which begins running on the date of the
alleged malpractice unless it is tolled by the continuous
representation doctrine until the date that the representation "in
the specific matter at issue" was terminated.  Nobile v. Schwartz,
56 Fed. Appx. 525, 526 (2d Cir. 2000) (citing Shumsky v.
Eisenstein, 96 N.Y.2d 164, 167-68, 726 N.Y.S.2d 365, 368-69
(2001)); see also N.Y. CPLR § 214(6).  For a representation to be
continuous, "the parties [must] possess a mutual understanding of
the need for further representation [and] . . . explicitly
contemplate that the professional relationship continue."  Arnold
v. KPMG LLP, 543 F. Supp. 2d 230, 236 (S.D.N.Y. 2008) (internal
quotation marks and citations omitted), aff'd, 334 Fed. Appx. 349
(2d Cir. 2009), cert. denied, 130 S. Ct. 503 (2009).

        Although Ms. Carvel does not describe her claim as one for
legal malpractice, she clearly alleges the elements of this cause
of action with respect to all of the defendants -- she claims that,
while working as her attorneys, they refused to provide
representation, respond to her instructions, give her detailed
invoices, make promised applications for reimbursement of funds,
return her legal files, or give her notice of proceedings that
affected her rights and interests.  (Am. Compl., ¶¶ 13-14, 33, 34,

36, 38, 129, 159, 161, 165; Supp. Pleading, ¶¶ 10, 14, 18, 20, 25-27, 29-30, 32, 40(b), 52, 61, 131-32, 136-37, 166-70, 176, 183-89, 191, 211-12).  As a direct result of these failures, Ms. Carvel alleges that she was damaged in the amount of $100,000,000.  (Am. Compl., ¶¶ 163-66).  However, the plaintiff's claims of legal malpractice fail with respect to all three groups of defendants, both because the statute of limitations has run and because her claims are not plausible.

### i. The Ross Defendants

Although the plaintiff has alleged acts of malpractice by Mr. Ross, none of those acts are within the three-year period immediately preceding the filing of this action; as a result, they fall outside the applicable statute of limitations and should be dismissed.  First, Ms. Carvel alleges that Mr. Ross violated the terms of his representation by "accept[ing] paid employment" from Betty Godley, "an adverse litigant" in a proceeding related to Agnes Carvel's estate assets, and by refusing to assert Ms. Carvel's interest in the same assets.  (Supp. Pleading, ¶¶ 116-17, 119).  However, Ms. Carvel defines the time period during which this behavior took place as 2000-2005; because this action was not filed until January 2009, these allegations fall outside the applicable statute of limitations.  (Supp. Pleading, ¶¶ 113, 115, 116, 118; Complaint).  Second, to the extent that the plaintiff is

33

attempting to assert violations of Agnes Carvel's rights that were assigned to her prior to Agnes Carvel's death, the statute of limitations on those claims began running, at the latest, upon Agnes Carvel's death in 1998 and thus also expired before the filing of this action.  (Supp. Pleading, ¶¶ 119, 121; Pl. Ross Opp. Memo., ¶¶ 3, 37; Complaint); <u>Trans-Resources, Inc. v. Nausch Hogan and Murray</u>, 298 A.D.2d 27, 30, 746 N.Y.S.2d 701, 704 (1st Dep't 2002) (holding that assignee of claim is subject to defenses that could have been asserted against assignor).  Similarly, the plaintiff's allegations that Mr. Ross failed to respond to her directions and refused to turn over evidence that he had collected at her behest and for which she had paid also fall outside of the statute of limitations, having occurred between 2000 and 2004, and therefore should be dismissed.  (Supp. Pleading, ¶¶ 125-26, 132, 144).

Ms. Carvel argues that the continuous representation doctrine tolls the statute of limitations because Mr. Ross continued to represent her through at least July of 2010. (Supp. Pleading, ¶ 17).  However, all of the tasks the Ross defendants performed for her terminated many years ago, and thus the continuous representation doctrine does not toll the statute of limitations for her legal malpractice allegations for a sufficient period of time to render them timely.  First, Ms. Carvel states that she

retained Mr. Ross to represent her as a named executor to Thomas
Carvel's estate in 1990. (Supp. Pleading, ¶ 78). Any
representation for that purpose would have terminated when Ms.
Carvel resigned from this position in 2000. (Decision dated Feb.
17, 2000, attached as Exh. J to Ross 10/8/09 Aff.). Second, any
representation by Mr. Ross of Agnes Carvel, or of Pamela Carvel as
Agnes Carvel's guardian, terminated with Agnes Carvel's death in
1998. (Supp. Pleading, ¶¶ 14, 83, 84, 86). Third, any role Ms.
Carvel played in having Mr. Ross appointed the New York ancillary
administrator to Agnes Carvel's estate did not create an attorney-
client relationship between them and so cannot be the basis for a
legal malpractice claim. (Am. Compl., ¶ 32; Supp. Pleading, ¶¶ 15,
88). Finally, Ms. Carvel states that she retained Mr. Ross to
represent her in litigation related to the ownership of Agnes
Carvel's shares in "Chain Locations of America, Inc. and Andreas
Holdings Corp." and to "assist" her in investigating various
charity fraud allegations. (Supp. Pleading, ¶¶ 81, 82, 85, 87).
However, the facts alleged in Ms. Carvel's supplemental pleading
indicate that these engagements occurred beginning in the 1990s and
continued through 2005 at the latest -- she does not identify any
act of legal representation or legal malpractice by the Ross
defendants related to either of these engagements after 2005.
(Supp. Pleading, ¶¶ 111-34). Because all of the various

engagements that Ms. Carvel claims the Ross defendants performed for her terminated over three years before she asserted any claim of legal malpractice, Ms. Carvel's allegations of ongoing legal malpractice against the Ross defendants also fail on statute of limitations grounds. (Am. Compl., ¶¶ 13-14, 129, 159, 161, 165; Supp. Pleading ¶¶ 40(b), 52, 147, 208). Therefore, her legal malpractice claim against the Ross Defendants should be dismissed.

### ii. The Blank Rome Defendants

Ms. Carvel's sole legal malpractice allegation against the Blank Rome defendants is that they failed to seek reimbursement for legal fees she had advanced to them for representation in proceedings related to Agnes Carvel's estate. (Am. Compl., ¶¶ 33, 129, 161; Supp. Pleading, ¶¶ 136-38). However, Ms. Carvel has not plausibly alleged that any of the Blank Rome defendants represented her in that litigation. In her Amended Complaint, the plaintiff states that she retained Ms. Markewich to "immediately seek reimbursement" for sums she had advanced, and in her supplemental pleading she identifies the date of that retainer as February of 2000. (Am. Compl., ¶ 33; Supp. Pleading, ¶¶ 18-19). However, the retainer letter memorializing that agreement, which Ms. Carvel submitted, clearly states that Blank Rome was "retained by Leonard Ross" in his position "as New York Ancillary Administrator of the Estate of Agnes Carvel." (Letter of Howard M. Camerik dated Feb.

22, 2000, attached as Exh. B to Carvel 1/7/11 Request, at 1). In light of this letter, the plaintiff's allegations of an attorney-client relationship between herself and the Blank Rome defendants with respect to litigation involving Agnes Carvel's estate are not plausible. Although she does plausibly plead an attorney-client relationship between herself and Blank Rome covering litigation between her and the Foundation, Ms. Carvel's claims regarding the Blank Rome defendants' failure to obtain reimbursement of her legal expenses do not relate to that representation. (Supp. Pleading, ¶ 135; Letter of Howard M. Camerik dated March 13, 2000, attached as Exh. C to Carvel 1/7/11 Request). The plaintiff's legal malpractice claim against the Blank Rome defendants should therefore be dismissed.

### iii. The McCarthy Fingar Defendants

The plaintiff alleges that the McCarthy Fingar defendants committed various acts of legal malpractice, including billing for tasks not performed, failing to provide invoices, breaching the terms of their retainer agreement, and refusing to provide representation. (Am. Compl., ¶¶ 36, 38, 165; Supp. Pleading, ¶¶ 25-27, 29-30, 32, 167-71, 176, 183-89, 211). Yet the pleadings and incorporated documents show that the attorney-client relationship between Ms. Carvel and the McCarthy Fingar defendants terminated in 2005; therefore, the statute of limitations defeats her claim for

legal malpractice against them.

Ms. Carvel claims that the McCarthy Fingar defendants represented her beginning in 1999 or 2000 in two capacities relevant to this lawsuit -- in litigation related Agnes Carvel's estate and litigation related to Thomas Carvel's estate. (Supp. Pleading, ¶¶ 25, 28, 166). She maintains that Mr. Aurnou has never withdrawn from either of these representations, by letter or otherwise. (Supp. Pleading, ¶¶ 34, 171, 197). Although the plaintiff admits that Mr. Streng and McCarthy Fingar withdrew from representing her in proceedings related to Thomas Carvel's estate in 2005, she maintains that they continued representing her in proceedings related to Agnes Carvel's estate through at least July of 2010 because they had not explicitly "withdr[awn] representation" as of that date. (Supp. Pleading, ¶¶ 28, 190). However, Mr. Streng wrote to Ms. Carvel in July 2005 withdrawing himself and McCarthy Fingar from representation in proceedings related to Agnes Carvel's estate and asking her to obtain new counsel in those proceedings. (Letter of Frank W. Streng dated July 15, 2005, attached as Exh. K to Brophy 9/30/10 Aff., at 2). This letter was sufficient to terminate his and McCarthy Fingar's representation in those proceedings because, at the very least, it undermined the "mutual understanding," Arnold, 543 F. Supp. 2d at 236, necessary for a finding of continuous representation.

Similarly, Ms. Carvel has failed to allege any independent act of legal representation or malpractice by Mr. Aurnou since 2000, aside from his ongoing failure to contact her or respond to her inquiries.  (Supp. Pleading, ¶¶ 171, 176).  The attorney-client relationship between Ms. Carvel and Mr. Aurnou therefore terminated, at the latest, with McCarthy Fingar's 2005 withdrawal. Because there was no attorney-client relationship between Ms. Carvel and the McCarthy Fingar defendants during the three-year period immediately prior to the institution of this lawsuit, the plaintiff's legal malpractice claim against the McCarthy Fingar defendants should be dismissed.

b. <u>Breach of Fiduciary Duty</u>

A breach of fiduciary duty occurs where (1) a fiduciary duty exists between the plaintiff and the defendant, (2) the defendant breaches the duty, and (3) damages result to the plaintiff from the breach.  <u>Meisel v. Grunberg</u>, No. 07 Civ. 11610, 2010 WL 4966443, at *2 (S.D.N.Y. Nov. 30, 2010) (citing <u>Whitney v. Citibank, N.A.</u>, 782 F.2d 1106, 1115 (2d Cir. 1986)).  The statute of limitations for a fiduciary duty claim under New York law depends on the nature of the relief sought.  For complaints seeking monetary relief, the statute of limitations is three years; for those seeking equitable relief, it is six years.  <u>Malmsteen v. Berdon, LLP</u>, 369 Fed. Appx. 248, 249 (2d Cir. 2010) (citing <u>Weiss v. T.D. Waterhouse,</u> 45 A.D.3d

763, 764, 847 N.Y.S.2d 94, 95 (2d Dep't 2007)).  Ms. Carvel's
Amended Complaint seeks both monetary and declaratory relief.  (Am.
Compl., at 58-60).  Declaratory relief is not inherently legal or
equitable; rather, its character depends on that of the underlying
action; "[t]he test is whether, in the absence of a prayer for
declaratory judgment, the issues presented should be properly
disposed of in an equitable as opposed to a legal action." 22A Am.
Jur. 2d <u>Declaratory Judgments</u> § 2; <u>see also</u> <u>Yoon v. Fordham
University Faculty and Administration Retirement Plan</u>, No. 99 Civ.
11042, 2004 WL 3019500, at *12 (S.D.N.Y. Dec. 29, 2004) (noting
declaratory judgment suits neither inherently legal nor inherently
equitable, but dependent upon nature of issues presented).  Because
the sole relief sought here aside from a declaratory judgment is
monetary, the action is legal, and thus a three-year statute of
limitations applies.[3]  (Am. Compl., ¶¶ 58-60; <u>see also</u> <u>Kermanshah
v. Kermanshah</u>, 580 F. Supp. 2d 247, 268 (S.D.N.Y. 2008) ("The
statute of limitations period for a declaratory judgment action is
based on the underlying substantive claims upon which it is
premised.").

---

[3] To the extent that Ms. Carvel is claiming actual fraud, a
six-year statute of limitations applies, regardless of the nature
of the relief requested.  <u>Scantek Medical, Inc. v. Sabella</u>, 583 F.
Supp. 2d 477, 490 (S.D.N.Y. 2008).  But, as will be discussed
below, the plaintiff's fraud claims all fail.

Ms. Carvel argues for the application of equitable tolling to stay the statute of limitations until the point at which she discovered the relevant conduct by the defendants. (Pl. Ross Opp. Memo., ¶ 93; Pl. Blank Rome Opp. Memo., ¶¶ 90-91; Pl. McCarthy Fingar Opp. Memo., ¶ 98). "Equitable tolling applies where a plaintiff has been prevented in some extraordinary way from exercising [her] rights." Hogan v. J.P. Morgan Chase Bank, No. 09-3048, 2010 WL 4847032, at *1 (2d Cir. Nov. 30, 2010) (internal quotation marks omitted). To be eligible for equitable tolling, the burden is on the plaintiff to show that she "acted with reasonable diligence during the time period she seeks to have tolled." Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 112 (2d Cir. 2008) (internal quotation marks omitted). Only "where a defendant's fraudulent or deceptive actions prevented [the] plaintiff from discovering the fraudulent scheme and/or filing a claim within the statutory period" will equitable tolling be appropriate. Scherer v. Gaildon Medical Systems, Inc., No. 02 Civ. 8847, 2004 WL 2884312, at *4 (S.D.N.Y. Dec. 10, 2004) (citing Simcuski v. Saeli, 44 N.Y.2d 442, 448-49, 406 N.Y.S.2d 259, 262 (1978)).

Even giving the plaintiff the benefit of equitable tolling until the time when she became aware of each alleged breach of fiduciary duty, and even assuming that fiduciary relationships

existed between her and each of the defendants, she has failed to allege any acts within the applicable tolled statute of limitations period that could plausibly constitute a breach of fiduciary duty by any of the defendants.  In Count Five of her Amended Complaint, Ms. Carvel alleges that the defendants breached their fiduciary duty to her by (1) entering into "agreements against their own client Pamela Carvel" and (2) "engag[ing] in deceptive business practices when they delivered . . . signed letter agreements making promises to Pamela Carvel so as to induce her to pay them, but these were false promises Defendants never intended to keep." (Am. Compl., ¶ 170).

With respect to the first allegation, the plaintiff points to the 2001 stipulation, which was entered into by Mr. Ross, Ms. Markewich, and representatives of the 1991 Trust and the Foundation.  (2001 Stipulation).  She asserts that, following the signing of the 2001 stipulation, the Ross defendants and the Blank Rome defendants ceased representing her interests and began purposely withholding or obstructing the delivery of monies owed to her.  (Supp. Pleading, ¶¶ 21, 48, 101, 144, 152).  However, the plaintiff admits that she was made aware of the existence of the 2001 stipulation in 2003.  (Supp. Pleading, ¶ 148).  Thus, even assuming her interpretation of the 2001 stipulation and giving her the benefit of equitable tolling until 2003, any cause of action

for breach of fiduciary duty based on the signing of the 2001 stipulation had to be asserted by 2006 at the latest, three years before the complaint in this action was filed.   Therefore, the signing of the 2001 stipulation cannot sustain the plaintiff's claim for breach of fiduciary duty

With respect to the letter agreements that form the second basis for Ms. Carvel's breach of fiduciary duty allegations, none of these agreements are sufficiently recent to fall within the statute of limitations period.  The plaintiff has failed to allege the existence of any "signed letter agreements" between herself and Mr. Ross; in any case, all of the allegations against Mr. Ross that could constitute a breach of fiduciary duty occurred before 2006. (Supp. Pleading, ¶¶ 90, 115, 116, 118, 125, 131).   Ms. Carvel accuses both the Blank Rome defendants and the McCarthy Fingar defendants of promising to seek reimbursement of legal fees she had advanced to them but then failing to do so.   (Am. Compl., ¶¶ 33, 36; Supp. Pleading, ¶ 184).   However, there is abundant evidence that she was aware of this alleged behavior on the part of both groups of defendants well before 2006, and at the latest by 2005, when she sent angry letters to both Mr. Streng and Ms. Markewich accusing them of precisely these acts.  (Letter of Pamela Carvel dated July 11, 2005, attached as Exh. S to Touitou 11/24/09 Decl., at 2; Letter of Pamela Carvel dated June 30, 2005, attached as Exh.

43

I to Brophy 9/30/10 Aff., at 1-2).  Therefore, none of these allegations can form the basis of a timely breach of fiduciary duty claim, even tolling the statute of limitations until 2005.

The only act alleged by Ms. Carvel that could constitute a breach of fiduciary duty within the limitations period is a hearsay statement allegedly made by Mr. Ross and communicated to Ms. Carvel by Ms. Markewich in 2009 to the effect that Mr. Ross "would take no steps to protect any interests of any beneficiaries or creditors of Agnes Carvel."  (Pl. Ross Opp. Memo., ¶ 87; Pl. Blank Rome Opp. Memo., ¶ 85).  The plaintiff claims to be both a beneficiary and a creditor of Agnes Carvel's estate.  (Am. Compl., ¶ 40; Supp. Pleading, ¶¶ 149, 216; Pl. Ross Opp. Memo., ¶ 85; Pl. Blank Rome Opp. Memo., ¶¶ 58, 83, 87; Plaintiff Pamela Carvel's Affidavit on Personal Knowledge in Opposition to Defendants Eve Markewich, Markewich & Rosenstock, Blank Rome Motion to Dismiss, ¶ 20).  However, the documentary evidence shows that she cannot be a beneficiary of Agnes Carvel's estate in New York, the only portion of the estate under Mr. Ross' protection, since Justice Scarpino found in 2002 that the sole beneficiary of that estate was the Foundation.  In re The Thomas and Agnes Carvel Foundation, 2002 WL 32872391, at *10.  To the extent that Ms. Carvel was a creditor of Agnes Carvel's New York estate, Mr. Ross not only acknowledged that fact, he attempted to obtain reimbursement for Ms. Carvel in the

amount of $167,270 for the legal fees she had advanced to Blank Rome.  (Reply Memorandum of Law of Leonard Ross and Ross & Matza in Support of Their Motion to Dismiss the Amended Complaint at 4-5; Decision and Order dated Feb. 27, 2009, attached as Exh. R to Ross 9/27/10 Aff., at 1).  Ultimately, Justice Scarpino decided not to award those fees to the plaintiff, but his decision was not predicated on Mr. Ross' failure to seek them.  (6/30/10 Decision at 10-11).  As a result, it is not plausible that Mr. Ross' hearsay statement could have comprised a breach of the fiduciary duty he may have owed to Ms. Carvel as a creditor of Agnes Carvel's estate in New York; the plaintiff's claims for breach of fiduciary duty should therefore be dismissed in their entirety.

c. Breach of Contract

The elements of a breach of contract claim in New York are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co., 375 F.3d 168, 177 (2d Cir. 2004).  The statute of limitations for a breach of contract claim is six years, and it begins running on the date of breach.  N.Y. CPLR § 213(2); John J. Kassner & Co. v. City of New York, 46 N.Y.2d 544, 550, 415 N.Y.S.2d 785, 788 (1979) ("In contract cases, the cause of action accrues and the Statute of Limitations begins to run from the time of the

breach."). A breach of contract claim that is "'premised on the same facts and seeking the identical relief'" as a claim for legal malpractice "'is redundant and should be dismissed.'" <u>Nordwind v. Rowland</u>, No. 04 Civ. 9725, 2007 WL 2962350, at *4-5 (S.D.N.Y. Oct. 10, 2007), <u>aff'd</u>, 584 F.3d 420 (2d Cir. 2009); <u>see also</u> <u>InKine Pharmaceutical Co. v. Coleman</u>, 305 A.D.2d 151, 152, 759 N.Y.S.2d 62, 63 (1st Dep't 2003) ("The breach of contract and breach of fiduciary duty claims were properly dismissed as duplicative, since they arose from the same facts as the legal malpractice claim and allege similar damages.").

The plaintiff states that all of the defendants breached contracts with her, alleging that they "misrepresented their intentions and their services in written and verbal contracts and agreements -- all of which were breached to the detriment of Pamela Carvel." (Am. Compl. at 49 & ¶ 163). In particular:

> Defendants acting individually and as managing partners in their firms, breached their promised conditions of employment and verbal agreements to represent Pamela Carvel and immediately seek reimbursement or indemnification to Pamela Carvel . . . . The specific conditions of employment to provide legal representation to Pamela Carvel required Defendant lawyers to seek payment for all sums advance [sic] to them by Pamela Carvel. Not one Defendant did so, and refused to do so when asked in a timely fashion as promised.

(Am. Compl., ¶ 165). For the reasons discussed below, this claim should be dismissed with respect to the Ross and Blank Rome

defendants; however, because the plaintiff has stated a claim for breach of contract against the McCarthy Fingar defendants, their motion to dismiss should be denied with respect to this cause of action.

i. The Ross and Blank Rome Defendants

Ms. Carvel does not specify when or under what circumstances the Ross defendants promised to seek reimbursement of legal fees she had advanced to them or to other attorneys on their behalf; however, she clearly alleges the existence of an agreement between herself and the Ross defendants to seek reimbursement of such monies.  (Am. Compl., ¶ 13; Supp. Pleading, ¶ 120).  With respect to the Blank Rome defendants, the plaintiff points to a letter agreement sent to her by Mr. Camerik regarding the terms of Blank Rome's representation of Mr. Ross as New York ancillary administrator of Agnes Carvel's estate, which states:

> As you have done previously, it is my understanding that you will be advancing or loaning funds to the Estate of Agnes Carvel in order to satisfy the firm's fees and costs.  While our payment of fees and costs will not be contingent upon an award of any court, we will of course dutifully apply to any appropriate Court to seek reimbursement to the Estate, you, or any other appropriate party, of the fees and costs we are paid.

(Letter of Howard M. Camerik dated Feb. 22, 2000, attached as Exh. B to Carvel 1/7/11 Request, at 1).  Ms. Carvel also alleges that Ms. Markewich verbally represented that she would seek "immediate

reimbursement for all advances made by Pamela on behalf of the estate" upon Blank Rome's retainer in 2000. (Supp. Pleading, ¶ 174).

The plaintiff identifies the Ross and Blank Rome defendants' act of breach of these alleged agreements as their signing of the 2001 stipulation in December of 2001; she alleges that this document excluded her "as equal fiduciary entitled to indemnification, in violation of the letter contract retaining Blank Rome." (Pl. Blank Rome Opp. Memo., ¶ 99; see also Am. Compl., ¶¶ 5, 57; Supp. Pleading, ¶¶ 101, 144). Even assuming Ms. Carvel's interpretation of the 2001 stipulation is correct, this document was executed over seven years before the complaint in this action was filed, and thus it falls outside the applicable statute of limitations period. (2001 Stipulation). Because the statute of limitations begins running at the time of breach, this claim is not subject to equitable tolling. Further, although the plaintiff states that she did not discover the stipulation itself until 2003, she claims that the parties began breaching their agreement with her earlier than that. (Am. Compl., ¶ 21; Supp. Pleading, ¶¶ 39(c), 101, 144, 148). Therefore, Ms. Carvel's claims for breach of contract should be dismissed with respect to the Ross and Blank Rome defendants. To the extent that other allegations made by Ms. Carvel against Mr. Ross and discussed above in the section on legal

malpractice can also be construed as claims for breach of contract, those claims should be dismissed as duplicative of the plaintiff's legal malpractice claim.  <u>Nordwind</u>, 2007 WL 2962350, at *4-5.

### ii. <u>The McCarthy Fingar Defendants</u>

The plaintiff alleges that the McCarthy Fingar defendants promised to seek reimbursement of all legal fees she had advanced for litigation related to Agnes Carvel's estate as a condition of their retention in 1999 and 2000.  (Am. Compl., ¶¶ 13, 36-37; Supp. Pleading, ¶¶ 25, 29, 170).  She claims that they subsequently breached that agreement by failing to recover advances she had made to other attorneys, including the Blank Rome defendants.  (Am. Compl., ¶ 38; Supp. Pleading, ¶¶ 27, 32, 170).  Furthermore, she alleges that despite McCarthy Fingar's having been awarded $400,000 in attorneys' fees by Justice Scarpino in June of 2003, the firm did not reimburse her for the legal costs she had advanced them in anticipation of that award, thereby taking payment twice over for the same services.  (Supp. Pleading, ¶¶ 27, 184, 194; 6/30/03 Decision at 7; 7/30/03 Order at 3).

Because Ms. Carvel alleges that the McCarthy Fingar defendants' breach occurred in 2003, following Justice Scarpino's decision, that act falls within the six-year statute of limitations since this action was filed in January of 2009.  (Supp. Pleading, ¶ 27).  Ms. Carvel's claim is therefore timely.

49

Her claim is also plausible.  She alleges an agreement between herself and the McCarthy Fingar defendants pursuant to which she retained them and advanced their legal fees, but which they breached by failing to seek or obtain reimbursements of those fees and other monies she claimed entitlement to; as a result, Ms. Carvel claims damages in the amount of $800,000 to $1,000,000. (Supp. Pleading, ¶¶ 184, 196).  The existence of such a retainer agreement is plausible, and Ms. Carvel's recitation of events is supported by the documentary evidence, including a 2000 retainer letter between her and McCarthy Fingar and Justice Scarpino's 2003 decision and order awarding McCarthy Fingar significant legal fees for its representation of Ms. Carvel.  (Letter of Philip T. Temple dated Oct. 13, 2000 ("McCarthy Fingar Letter"), attached as Exh. F to Touitou 9/30/10 Aff.; 6/30/03 Decision at 7; 7/30/03 Order at 3).  The McCarthy Fingar defendants have failed to address Ms. Carvel's breach of contract allegations, asserting only that she failed to properly plead the elements of this claim in her Amended Complaint.  (McCarthy Fingar Memo. at 12-13).  This assertion is incorrect, especially in light of the more lenient standard applied to pro se pleadings under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Erickson, 551 U.S. at 94.  The plaintiff has therefore stated a claim for breach of contract against the McCarthy Fingar defendants, and I recommend that their motion to

dismiss be denied with respect to this claim.

### d. Common Law Fraud

Common law fraud under New York law is comprised of four elements: (1) a "material, false representation," (2) made with the intent to defraud, (3) that is reasonably relied on by the plaintiff, (4) thereby causing her damage. Chanayil v. Gulati, 169 F.3d 168, 171 (2d Cir. 1999) (internal quotation marks omitted). The statute of limitations is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. CPLR § 213(8). A claim for common law fraud is subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). In her Amended Complaint, Ms. Carvel claims that each of the defendants "made false representation to [her] regarding services to be rendered" and that she relied on those representations to her financial detriment. (Am. Compl., ¶¶ 159, 161). Her claims of fraud nevertheless fail because they are either untimely or insufficiently pled.

The key act of fraud alleged by Ms. Carvel against the defendants is their false promise to obtain reimbursement of the

legal fees she advanced in connection with litigation related to
Agnes Carvel's estate.  (Am. Compl., ¶¶ 13-14, 129; Supp. Pleading,
¶¶ 29, 32, 136-37, 174-75).  She states that each of the defendants
"made false representations to [her] about steps they would take to
seek reimbursement for cash advances [she] made to them."  (Am.
Compl., ¶ 159).  In reliance on these promises, Ms. Carvel claims
to have continued paying cash advances to the defendants.  (Am.
Compl., ¶ 13).  This claim founders, however, because the plaintiff
alleges that these promises were made in 1999 or 2000, eight years
or more before the complaint in this action was filed and thus
outside the statute of limitations period.  (Am. Compl., ¶ 129;
Supp. Pleading, ¶¶ 25, 27, 29, 174; Letter of Howard M. Camerik
dated Feb. 22, 2000, attached as Exh. B to Carvel 1/7/11 Request,
at 1; McCarthy Fingar Letter).   Furthermore, the plaintiff's
pleadings make clear that she was aware of the defendants' alleged
misrepresentations by either 2003, when she learned of the 2001
stipulation, or 2005 at the latest, when she wrote letters to Ms.
Markewich and Mr. Streng accusing them and their firms of violating
their promise to seek reimbursement of fee advances.  (Supp.
Pleading, ¶ 148; Letter of Pamela Carvel dated July 11, 2005,
attached as Exh. S to Touitou 11/24/09 Decl., at 2; Letter of
Pamela Carvel dated June 30, 2005, attached as Exh. I to Brophy
9/30/10 Aff., at 1-2).  She therefore waited far longer than the

two years allowed her under the statute of limitations from the time she discovered this alleged fraud until the date she filed her complaint.

The plaintiff additionally alleges that all of the defendants fraudulently promised to work on her behalf "against the unlawful actions by the foundation fraudsters" but then failed to do so, thereby causing her financial harm.  (Am. Compl., ¶ 161; Supp. Pleading, ¶ 41(e)).  This allegation also fails on statute of limitations grounds.  Ms. Carvel states that the defendants first refused to oppose the "foundation fraudsters" in 2000, a refusal that she was no doubt aware of at the time since she was actively involved in litigation against the Foundation.  Therefore, these claims necessarily accrued years before the complaint was filed in 2009.  (Supp. Pleading, ¶ 41(e)).

The only series of facts alleged by the plaintiff that could come within the statute of limitations for common law fraud is her claim to have first learned in 2009 that Mr. Ross was not going to take any "steps to protect any interests of any beneficiaries or creditors of Agnes Carvel."  (Pl. Ross Opp. Memo., ¶ 87; Pl. Blank Rome Opp. Memo., ¶ 85).  Although the plaintiff does not state when Mr. Ross initially promised her that he would protect her interests as a beneficiary or creditor of Agnes Carvel's estate, any such promise took place prior to his appointment as the New York

ancillary administrator of the estate, since Ms. Carvel approved of and promoted his taking on that position. (Am. Compl., ¶ 32; Supp. Pleading, ¶¶ 15, 88). That places his statement in 1998 or 1999, far more than six years before the filing of the complaint in this action and therefore outside the applicable statute of limitations. (Am. Compl., ¶ 32; Supp. Pleading, ¶¶ 15, 88; Ross Memo. at 10).

Yet to the extent that Ms. Carvel reasonably continued to rely on any intentional misrepresentation by Mr. Ross until her conversation with Ms. Markewich in 2009, her claim for common law fraud could still be timely. However, the plaintiff has not plausibly alleged such reliance. First, she states at various points in her pleadings that she was aware long before 2009 that Mr. Ross had already abandoned his purported obligation to protect her as a beneficiary and creditor of Agnes Carvel's estate, primarily as a result of his decision to sign the 2001 stipulation, which she learned of in 2003, but also as a result of other acts of which she was aware by 2005. (Am. Compl., ¶ 40 (referring to the 2001 stipulation); Supp. Pleading, ¶¶ 144, 148, 153, 216). As a result, her claim to have been surprised or materially affected by again receiving this information in 2009 is not plausible. Second, Ms. Carvel has failed to allege the circumstances of this misrepresentation with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. She has not identified when

54

or where Mr. Ross promised to protect her as a beneficiary or creditor of Agnes Carvel's estate, <u>Wood</u>, 328 Fed. Appx. at 747; she also has not explained why this statement was fraudulent, especially in light of Mr. Ross' attempt to obtain reimbursement of her legal fees as part of the settlement of Agnes Carvel's estate. (Decision and Order dated Feb. 27, 2009, attached as Exh. R to Ross 9/27/10 Aff., at 1).

Thus, the plaintiff's allegations of common law fraud are both untimely and insufficiently pled to sustain her burden under Rule 9(b) of the Federal Rules of Civil Procedure, and I recommend that they be dismissed.

e. <u>Fraudulent or Negligent Misrepresentation</u>

Fraudulent misrepresentation has four elements under New York Law: "'(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance.'" <u>Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.</u>, No. 05 CV 6734T, 2007 WL 162763, at *6 (W.D.N.Y. Jan. 18, 2007) (quoting <u>Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.</u>, 157 F.3d 933, 940 (2d Cir. 1998)). Negligent misrepresentation is also comprised of four elements: (1) the defendant was "careless[] in imparting words," (2) on which listeners could reasonably be

expected to rely, (3) and based upon which they acted or failed to act, (4) resulting in damage.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003).  The statute of limitations for fraudulent misrepresentation is the same as that for common law fraud -- the greater of six years from the date the fraud was perpetrated or two years from the date of the plaintiff's actual or reasonably possible discovery of the fraud.  N.Y. CPLR § 213(8).  Although claims sounding in negligence typically carry a three-year statute of limitations under New York law, claims of negligent misrepresentation based on the commission of a fraud carry the same statute of limitations as for fraudulent misrepresentation.  Federal Insurance Co. v. Distinguished Properties Umbrella Managers Inc., 721 F. Supp. 2d 293, 297 & n.1 (S.D.N.Y. 2010).  Claims for both fraudulent misrepresentation and negligent misrepresentation based on fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).

The plaintiff's claims for fraudulent and negligent misrepresentation are based on the same factual allegations that underlie her claim for common law fraud.  Because the same statute of limitations also applies, the majority of the plaintiffs'

allegations of fraudulent and negligent misrepresentation are untimely, as discussed above.  With respect to her allegations regarding her conversation with Ms. Markewich in 2009 in which the latter allegedly communicated, for the first time, Mr. Ross' intention not to fulfill "any legal obligations to . . . named beneficiaries and to known creditors of Agnes Carvel," this claim again fails as untimely and insufficiently pled.  (Pl. Ross Opp. Memo., ¶ 87; Pl. Blank Rome Opp. Memo., ¶ 85).  As discussed above, the underlying misrepresentation must have occurred on or before 1999, placing it far outside the applicable statute of limitations for this claim.  Because the pleadings state that Ms. Carvel was aware as early as 2003 that Mr. Ross had abandoned any obligation he might have to her as a beneficiary or creditor of Agnes Carvel's estate, her alleged "discovery" of the misrepresentation in 2009 is not plausible and thus places these allegations entirely outside the statute of limitations.  Finally, this allegation fails to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure since Ms. Carvel has failed to identify facts regarding the underlying misrepresentation or how she was injured by it.  Therefore, the plaintiff's claims for fraudulent and negligent misrepresentation should be dismissed.

### f. Conversion

Under New York law, conversion is "'the unauthorized

assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" Thyroff v. Nationwide Mutual Insurance Co., 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting Vigilant Insurance Co. of America v. Housing Authority, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 347 (1995)). Conversion does not apply to sums of money unless the money sought is a "determinate sum[]" that is "specific and capable of identification." 90 C.J.S. Trover and Conversion § 16; see also LoPresti v. Terwilliger, 126 F.3d 34, 41-42 (2d Cir. 1997) ("'[I]t is well-settled that an action will lie under New York law for conversion of money where there is an obligation to return or otherwise treat in a particular manner the specific money in question." (alteration in the original) (quoting Vanderbilt University v. Dipsters Corp., No. 84 Civ. 7215, 1986 WL 10471, at *3 (S.D.N.Y. Sept. 17, 1986))). The statute of limitations for a claim of conversion is three years, and it accrues on the date that the conversion occurs. N.Y. CPLR § 214(3); Daisley v. FedEx Ground Package System, Inc., 376 Fed. Appx. 80, 81 (2d Cir. 2010).

The plaintiff's claim for conversion relies on two incidents. The first, which Ms. Carvel terms "Fraudulent Conversion of Real Estate," allegedly occurred when "Plaintiff's adversaries conspired to fraudulently transfer real estate once owned by Thomas and Agnes Carvel for less than fair market value, to insiders, in a self-

dealing scheme with Hudson Valley Bank." (Am. Compl. at 31 & ¶ 93). Although she alleges that the defendants here were tangentially involved in this scheme in that they failed "to stop or recover the illegally transferred assets because of the agreements for these same adversaries to pay [the] Defendants for their collusion," Ms. Carvel nowhere alleges any damage to herself as a result of this transfer. (Am. Compl., ¶ 93). Therefore, this claim fails to meet the requirements of Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The second incident involves Mr. Ross' acquisition and withholding of a quantity of United States savings bonds allegedly belonging to Ms. Carvel. (Am. Compl., ¶¶ 122-23; Supp. Pleading, ¶¶ 95-110). The plaintiff claims that these bonds were left to her as a specific bequest in Agnes Carvel's will but remained in the possession of a lawyer in Tennessee until 2003. (Supp. Pleading, ¶¶ 95-97, 99). At that point, Mr. Ross was contacted by that attorney regarding the appropriate disposition of the bonds, and Mr. Ross directed that they be forwarded to him for delivery to Ms. Carvel; yet when the bonds arrived in New York, he did not notify her. (Supp. Pleading, ¶¶ 99, 102-03). The primary flaw in this allegation its timing: the plaintiff states that all of these events occurred in January of 2003 and that she was made aware of them "[a]t some time around 2003" when Mr. Ross "verbally admitted

to [her] that he had directed delivery of the bonds to himself" and was retaining them as part of his role as the New York ancillary administrator of Agnes Carvel's estate.  (Supp. Pleading, ¶¶ 99, 102, 104).  Because the alleged conversion occurred in 2003, the statute of limitations accrued at that time and expired in 2006. Moreover, Ms. Carvel cannot claim the benefit of equitable tolling because she admits that she was informed of these activities in 2003.

Because the plaintiff's conversion claims are untimely and insufficiently pled, they should be dismissed.

### g. Unjust Enrichment

In Count Four of her complaint, Ms. Carvel claims that the defendants have been unjustly enriched at her expense and asks for compensatory damages in the amount of $100,000,000.  (Am. Compl. at 49 & ¶ 166).  However, a cause of action for unjust enrichment under New York law is only available where a valid, enforceable contract does not already exist between the parties.  Rabin v. Mony Life Insurance Co., 387 Fed. Appx. 36, 42 (2d Cir. 2010).  Where a plaintiff brings claims for both breach of contract and unjust enrichment but fails to allege any duty owed to her outside that specified in the contract, her claim for unjust enrichment should be dismissed as duplicative.  See Hoeffner v. Orrick, Herrington & Sutcliffe LLP, 61 A.D.3d 614, 615, 878 N.Y.S.2d 717, 719 (1st Dep't

2009) (finding plaintiff's unjust enrichment claim "duplicative of his breach of contract claim, since he alleges no duty owed him by defendants independent of the contract").

Here, the plaintiff's unjust enrichment claim is entirely duplicative of her breach of contract claims -- the claims are pled under the same heading, rely on the same underlying facts, and lead to the same prayer for relief. (Am. Compl. at 49 & ¶¶ 163, 165, 166).   Therefore, I recommend that the plaintiff's unjust enrichment claim be dismissed.

### h. Attorney Liability in Negligence to Third Parties

In her motion papers, Ms. Carvel cites Schwartz v. Greenfield Stein & Weisinger, 90 Misc. 2d 882, 396 N.Y.S.2d 582 (Queens Sup. Ct. 1977), for the proposition that an attorney can be liable in tort to an individual not her client but for whom she promises to perform a legal task. (Pl. Ross Opp. Memo., ¶ 83; Pl. Blank Rome Opp. Memo., ¶ 79; Pl. McCarthy Fingar Opp. Memo., ¶ 90).   In that case, the plaintiff made a secured loan to a borrower and relied on the borrower's attorney to perfect the security agreement. Id. at 882-83, 396 N.Y.S.2d at 582.   The attorney failed to do so and the borrower subsequently went into bankruptcy, leaving the plaintiff without recourse for his loan. Id. at 883, 396 N.Y.S.2d at 582-83. The plaintiff then sued the borrower's attorney, claiming that the latter owed a duty to the plaintiff to perfect the security

agreement and that, as a result of the attorney's negligence, the plaintiff had suffered the loss of the monies he loaned to the borrower.  Id. at 883, 396 N.Y.S.2d at 583.  The Queens County Supreme Court agreed with the plaintiff, finding that privity of contract between the plaintiff and the attorney was not necessary because the attorney owed an independent duty to the plaintiff as a result of his promise to perfect the security agreement.  Id. at 886-87, 396 N.Y.S.2d at 584-85.

It is not clear that this case has any application in the instant matter.  The plaintiff alleges privity of contract between herself and all of the defendants; there is thus no reason why she would need to rely on this theory in order to sustain claims against the defendants for violations of their agreements.  She offers no additional facts in support of this claim aside from the ones that underlie her breach of contract and negligent misrepresentation claims.  This claim therefore has no basis in the plaintiff's complaint, and I recommend that it be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### i. Aiding Breach of Fiduciary Duty and Conversion

The plaintiff asserts that the defendants "could be held liable" for having aided other defendants in their breaches of fiduciary duty and acts of conversion. (Pl. Ross Opp. Memo., ¶ 81; Pl. Blank Rome Opp. Memo., ¶ 77; Pl. McCarthy Fingar Opp. Memo., ¶

88).  She relies on <u>Joel v. Weber</u>, 197 A.D.2d 396, 602 N.Y.S.2d 383 (1st Dep't 1993), which holds that "under New York law, an attorney may be liable to third parties for actions taken in furtherance of his role as counsel upon proof . . . of the existence of fraud, collusion, malice or bad faith."  <u>Id.</u> at 396-97, 602 N.Y.S.2d at 384 (internal quotation marks omitted).  Such actions sound in malpractice and therefore carry a three-year statute of limitations.  N.Y. CPLR § 214(6).

This claim runs aground because it is untimely and because the plaintiff has failed to plead sufficient facts to sustain it.  Ms. Carvel's pleadings indicate that this cause of action arises out of four different representations undertaken by the Ross and Blank Rome defendants.  First, she refers to Mr. Ross' role as "both client-fiduciary and lawyer for the estates, trusts and corporations."  (Pl. Ross Opp. Memo., ¶ 80; Pl. Blank Rome Opp. Memo., ¶ 76).  However, she does not identify the specific "estates," "trusts," or "corporations" to which she is referring; nor does she explain how these entities have violated her rights, let alone how they have done so based on the Ross defendants' advice.  Her pleading is therefore insufficient to fulfill the requirements of Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Second, Ms. Carvel refers to Blank Rome's representation of Mr. Ross as the New York ancillary administrator

of Agnes Carvel's estate.  (Pl. Blank Rome Opp. Memo., ¶ 76).  The plaintiff does separately allege that at least one of the Ross defendants' violations of her rights occurred as a result of the Blank Rome defendants' influence over him.  (Supp. Pleading, ¶¶ 16, 90).  However, that violation -- the signing of the 2001 stipulation -- occurred in December of 2001 and was discovered by the plaintiff in 2003; as a result, this allegation is untimely.  (Supp. Pleading, ¶¶ 101, 144, 148).  Third, Ms. Carvel refers to Blank Rome's representation of Agnes Carvel's estate in Florida and New York.  (Pl. Blank Rome Opp. Memo., ¶ 76).  But she fails to specify what advice the Blank Rome defendants gave to the estate's representatives or how the estate acted to harm her, and thus this claim fails for insufficient pleading pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Finally, Ms. Carvel claims, "[o]n information and belief," that M&R "advised Leonard Ross to engage[] in fraud across state lines" when he allegedly converted her savings bonds.  (Pl. Blank Rome Opp. Memo., ¶ 86).  Because this alleged conversion occurred in 2003, the statute of limitations for this claim expired in 2006; furthermore, the plaintiff does not plead the facts underlying her "belief" that M&R had given Mr. Ross such advice and therefore has not alleged sufficient facts to sustain this claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

64

Because Ms. Carvel's allegations are either untimely or insufficiently pled, I recommend that her claim for aiding breach of fiduciary duty and conversion should be dismissed.

j. Tortious Interference with Business Relations

To state a claim for tortious interference with business relations under New York law, the plaintiff must show: "(1) [she] had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Development, L.L.C. v. Park Place Entertainment Corp., 547 F.3d 115, 132 (2d Cir. 2008). The statute of limitations is three years and "'accrues at the time the injury is sustained, rather than the date of defendant's alleged wrongful act or the date of discovery of the injury by the plaintiff.'" Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc., No. 02 Civ. 6438, 2003 WL 21507529, at *3 (S.D.N.Y. June 30, 2003) (quoting Rosemeier v. Schenker International, Inc., 895 F. Supp. 65, 66 (S.D.N.Y. 1995).

The plaintiff briefly mentions this cause of action in her Amended Complaint, stating that the "Defendants conspired to tortiously interfere with Pamela Carvel's business expectations, from contracts, agreements, assignments, and promises valued at over $15 million." (Am. Compl., ¶ 92). This statement is

insufficient to plead a claim for tortious interference with business relations. Even considering the entirety of the plaintiff's pleadings, it is impossible to discern which defendants are alleged to have participated in this conspiracy or what potential business expectations or relations were interfered with. I therefore recommend that this cause of action be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### k. Fraudulent Conveyance

"[T]he general goal of fraudulent conveyance laws is to prevent valuable assets from being transferred away from a debtor in exchange for less than fair value, thus leaving insufficient funds or assets to compensate honest creditors."  37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 1.  To prove that a fraudulent conveyance occurred under New York law, "'a creditor must show intent to defraud on the part of the transferor.'"  In re Sharp International Corp., 403 F.3d 43, 56 (2d Cir. 2005) (quoting HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1059 n.5 (2d Cir. 1995)). Because such intent constitutes fraud, it must be pled with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Id.

Ms. Carvel's sole reference to any alleged fraudulent conveyances appears in Count Six of her Amended Complaint, where she claims that the defendants "engaged in fraudulent transfers to

themselves and their agents to defraud Pamela Carvel's claims." (Am. Compl., ¶ 177).  However, this allegation is insufficiently specific to meet Rule 9(b)'s threshold -- it does not identify who possessed the transferred assets, explain how that individual or entity was in the plaintiff's debt, describe when or where the defendants executed these transfers, state how the plaintiff was defrauded by them, or claim any damages.  Therefore, this cause of action should be dismissed pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

### l. <u>Intentional Infliction of Emotional Distress</u>

Under New York law, the tort of intentional infliction of emotional distress has four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."  <u>Bender v. City of New York</u>, 78 F.3d 787, 790 (2d Cir. 1996).  For conduct to be considered "extreme and outrageous," it must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'"  <u>Stuto v. Fleishman</u>, 164 F.3d 820, 827 (2d Cir. 1999) (quoting <u>Howell v. New York Post Co.</u>, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353 (1993)).  The statute of limitations for a claim of intentional infliction of emotional distress is one

67

year, accruing on the date the tort was committed.  Zaltz v. Wells Fargo Home Mortgage, No. 08 Civ. 11225, 2010 WL 3026536, at *4 (S.D.N.Y. Aug. 2, 2010).

In Count Six of her Amended Complaint, the plaintiff identifies various of the defendants' acts that underlie her claim for intentional infliction of emotional distress, including "financial extortion, personal threats amounting to criminal coercion, and harassment" of both Agnes Carvel and herself.  (Am. Compl., ¶¶ 178-80).  To the extent that these threats were actually made against Agnes Carvel, they clearly fall outside the statute of limitations, since Agnes Carvel died in 1998.[4]  (Am. Compl., ¶¶ 24, 71, 178, 180).

Of the remaining acts, the plaintiff alleges only one that falls within the statute of limitations applicable to her claim for intentional infliction of emotional distress.  Ms. Carvel states that she was informed in 2009 by Ms. Markewich that Mr. Ross "would take no steps to protect any interests of any beneficiaries or creditors of Agnes Carvel because those matters would be left to the estate in England."  (Pl. Ross Opp. Memo., ¶ 87).  As described, this act falls far short of the "atrocious" and "utterly

---

[4] Ms. Carvel would not have direct standing to enforce any tort committed against Agnes Carvel; however, she claims standing as an assignee because "in 1994 Agnes Carvel assigned her causes of action[] in claims to Pamela Carvel."  (Pl. Ross Opp. Memo., ¶ 37).

intolerable" behavior required to meet the standard for "extreme and outrageous" conduct under New York law.  <u>Stuto</u>, 164 F.3d at 827.  Therefore, the plaintiff has failed to sufficiently plead the elements of a claim for intentional infliction of emotional distress, and this cause of action should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

        3. <u>Federal Claims</u>

In addition to her common law claims, the plaintiff has pled five causes of action based in federal law: (1) a violation of her rights as protected by 42 U.S.C. § 1981, (2) a conspiracy to violate her constitutional rights pursuant to 42 U.S.C. § 1983, (3) a conspiracy to violate her constitutional rights pursuant to 42 U.S.C. § 1985(2), (4) a violation of her rights as protected by 42 U.S.C. § 1988, and (5) a civil RICO claim.  I will address each of these claims in turn.

        a. <u>42 U.S.C. § 1981</u>

Section 1981 confers on

> [a]ll persons within the jurisdiction of the United States . . . the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981(a).  To state a claim pursuant to § 1981, the plaintiff must show that she "is a member of a racial minority

group and the defendants intended to discriminate against her based on her race." White v. St. Joseph's Hospital, 369 Fed. Appx. 225, 226-27 (2d Cir. 2010).  Although Ms. Carvel claims the protection of § 1981, she has failed to plead that she is a member of a racial minority or that the defendants took adverse actions against her based on her race.  (Am. Compl. at 42).  Therefore, she has failed to state a claim for a violation of 42 U.S.C. § 1981, and this cause of action should be dismissed.

### b. 42 U.S.C. § 1983

"To state a claim for relief in an action brought under § 1983, [the plaintiff] must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  Acting "under color of state law" requires a defendant to "exercise[] power possessed by virtue of state law and made possible only because [she] is clothed with the authority of state law." Arar v. Ashcroft, 585 F.3d 559, 568 (2d Cir. 2009) (quoting West v. Atkins, 487 U.S. 42, 49 (1988)) (internal quotation marks omitted).  A private individual can also be subject to suit under § 1983, but only if she is "a willful participant in a joint activity with the State or its agents." Lugar v. Edmondson Oil Co., 457 U.S. 922, 947 (1982).  The statute of limitations for

a claim under § 1983 in New York is three years, <u>Harrison v. Harlem Hospital</u>, 364 Fed. Appx. 686, 688 (2d Cir. 2010), and it accrues when the plaintiff learns, or reasonably should have learned, of the injury on which the claim is based, <u>De Carlo v. Ratner</u>, 204 F. Supp. 2d 630, 638 (S.D.N.Y. 2002), <u>aff'd</u>, 53 Fed. Appx. 161 (2d Cir. 2002).

"'To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act in furtherance of that goal causing damages.'" <u>AK Tournament Play, Inc. v. Town of Wallkill</u>, No. 09 Civ. 10579, 2011 WL 197216, at *3 (S.D.N.Y. Jan. 19, 2011) (quoting <u>Pangburn v. Culbertson</u>, 200 F.3d 65, 72 (2d Cir. 1999)). Although a plaintiff cannot simply set forth conclusory allegations of a § 1983 conspiracy, <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 324 (2d Cir. 2002), the Second Circuit has acknowledged that "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." <u>Pangburn</u>, 200 F.3d at 72 (internal quotation marks omitted).

Ms. Carvel claims that all of the defendants here, along with other individuals not named, participated in a conspiracy to deprive her of various constitutional rights, including: (1) "equal

treatment as that given other <u>Carvel</u> fiduciaries, beneficiaries, and creditors who aligned with [the Foundation]" pursuant to the Privileges and Immunities Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (2) "due process to recover stolen and wrongfully diverted property" pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (3) "the right to assist law enforcement without personal and financial threats, harassment, and intimidation" pursuant to the First Amendment to the United States Constitution; and (4) the right to a jury trial pursuant to the Seventh Amendment to the United States Constitution. (Am. Compl., ¶¶ 79, 146; Supp. Pleading, ¶¶ 42(c), 75(d)). She alleges that this conspiracy had two purposes: to maintain the Foundation's control over Agnes Carvel's estate assets and to prevent Ms. Carvel from investigating acts of fraud and wrongdoing by the defendants, Justice Scarpino, and the individuals running the Foundation. She further alleges that it was accomplished in two ways: by naming the Foundation as the remainder beneficiary of Agnes Carvel's estate and by causing the plaintiff financial hardship by denying her reimbursement of her legal fees. (Am. Compl., ¶¶ 10-11, 16, 40, 63, 87, 98, 146, 148, 153, 187; Supp. Pleading, ¶¶ 38(b), 55-58, 153).

Ms. Carvel alleges that these actions were perpetrated "under

color . . . of state law" because the defendants were joined in this conspiracy by Justice Scarpino, a state employee acting in his official capacity. (Am. Compl., ¶¶ 5, 16, 40, 59). She states that both Juustice Scarpino and the defendants agreed to participate in the conspiracy after accepting payment from the "foundation fraudsters," the individuals running the Foundation and the 1991 Trust. (Am. Compl., ¶ 66; Supp. Pleading, ¶ 140; Supp. Pleading Reply, ¶¶ 7, 9). In particular, the plaintiff alleges that William Griffin, the President of the Foundation and also the purported owner of Hudson Valley Bank, bribed Justice Scarpino with three home equity lines of credit totaling $400,000 that Justice Scarpino took out in 2000, 2001, and 2004. (Am. Compl., ¶¶ 77-78; Supp. Pleading, ¶ 40(e); Supp. Pleading Reply, ¶¶ 7, 9). She also claims that the same "foundation fraudsters" gave money to the Ross and Blank Rome defendants to induce them to abandon her interests by failing to seek reimbursement for her and "throwing" the trial that ended with the Foundation being named as the remainder beneficiary of Agnes Carvel's estate. (Am. Compl., ¶¶ 63, 66; Supp. Pleading at 18 & ¶¶ 55-58). She states that the "foundation fraudsters" paid off the Ross and Blank Rome defendants through the 2001 stipulation, in which the Foundation and the 1991 Trust agreed to pay the Ross and Blank Rome defendants on an ongoing basis for their legal work on behalf of Agnes Carvel's ancillary estate in

73

New York.  (Supp. Pleading, ¶ 48(a); Stipulation).  With respect to
the McCarthy Fingar defendants, Ms. Carvel alleges that Mr. Streng
had a personal relationship with Justice Scarpino that enabled him
to deny Ms. Carvel reimbursement of the legal fees she had advanced
to McCarthy Fingar despite having been awarded $900,000 in fees by
Justice Scarpino for his representation of the plaintiff.  (Am.
Compl., ¶ 83; Supp. Pleading, ¶¶ 193-94).

Even if these allegations were true, the plaintiff's claim is
time-barred.  The injuries underlying her conspiracy claim -- the
failure to reimburse her legal fees, the denial of her right to a
jury trial, and the selection of the Foundation as the remainder
beneficiary of Agnes Carvel's estate -- were all apparent to the
plaintiff by 2005 at the latest, and thus the statute of
limitations for this claim expired in 2008.  (Am. Compl., ¶ 2;
Supp. Pleading, ¶¶ 56-57, 153, 210-11, 216; Letter of Pamela Carvel
dated July 11, 2005, attached as Exh. S to Touitou 11/24/09 Decl.,
at 2; Letter of Pamela Carvel dated June 30, 2005, attached as Exh.
I to Brophy 9/30/10 Aff., at 1-2); In re The Thomas and Agnes
Carvel Foundation, 2002 WL 32872391, at *10.  Therefore, this claim
should be dismissed.

c. 42 U.S.C. § 1985(2)

To state a claim for conspiracy pursuant to § 1985(2), the
plaintiff must allege that (1) she is a member of a protected

class, (2) the defendants conspired to deprive her of her constitutional rights, (3) the defendants "acted with class-based, invidiously discriminatory animus," and (4) the plaintiff suffered damage. Simpson ex rel. Simpson v. Uniondale Union Free School District, 702 F. Supp. 2d 122, 133 (E.D.N.Y. 2010) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)). Ms. Carvel references a claim for conspiracy pursuant to 42 U.S.C. § 1985(2) in both her Amended Complaint and her motion papers. (Am. Compl. at 42; Pl. Blank Rome Opp. Memo., ¶ 64). However, nowhere does she allege either that she is a member of a protected class or that the defendants' conspiratorial actions were motivated by her membership in that class. This cause of action should therefore be dismissed for failure to state a claim.

### d. 42 U.S.C. § 1988(a)

In her motion papers, Ms. Carvel implies that the defendants have violated her rights as protected by § 1988(a). (Pl. Blank Rome Opp. Memo., ¶ 65). This claim fails for a variety of reasons. In the first instance, § 1988(a) does not give individuals a substantive right but rather provides a mechanism for filling procedural gaps that might hinder the enforcement of federal civil rights laws. See, e.g., Wallace v. Kato, 549 U.S. 384, 402 (2007); City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 725 (1999). The plaintiff has stated no facts relevant to the

application of this procedural mechanism; she has also failed to explain how § 1988(a) protects her, how the defendants violated it, or what damages she has sustained as a result. Therefore, her claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 5. Civil RICO

The Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") authorizes the filing of private civil suits by "any person injured in his business or property by reason of a violation" of its provisions. 18 U.S.C. § 1964(c). A person bringing a RICO claim must first plead the elements of a RICO violation, which include "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity," followed by an "injury to [her] business or property as a result of the RICO violation." Terrell v. Eisner, 104 Fed. Appx. 210, 212 (2d Cir. 2004) (internal quotation marks omitted). To show a "pattern of racketeering activity," the plaintiff must allege at least two acts among those enumerated in 18 U.S.C. § 1961(1), which include bribery, obstruction of justice, obstruction of criminal investigations, tampering with a witness or victim, and retaliating against a witness or victim. 18 U.S.C. § 1961(1), (5). The statute of limitations for a civil RICO claim is four years, and it accrues "'when the plaintiff discovers or should have discovered

the RICO injury.'"   Gilmore v. Gilmore, No. 09 Civ. 6230, 2010 WL
4910211, at *3 (S.D.N.Y. Nov. 15, 2010) (quoting National Group for
Communications and Computers Ltd. v. Lucent Technologies Inc., 420
F. Supp. 2d 253, 264 (S.D.N.Y. 2006)).

     In her Amended Complaint, Ms. Carvel alleges "[o]n information
and belief" that the defendants "entered into an enterprise of
corruption," which she refers to as a RICO violation.  (Am. Compl.,
¶¶ 68, 106-07, 183).  Of the various acts allegedly committed by
the defendants, there are four that could qualify as racketeering
activity as defined by 18 U.S.C. § 1961(1).  The first is bribery
-- the plaintiff states that the defendants here participated in a
scheme whereby Mr. Griffin bribed Justice Scarpino to make rulings
favorable to the Foundation.   (Am. Compl., ¶¶ 77-78; Supp.
Pleading, ¶ 40(e)).  However, any injury arising from these alleged
bribes would have been known to Ms. Carvel by 2002, when Justice
Scarpino found that the Foundation was the rightful remainder
beneficiary of Agnes Carvel's estate.   In re The Thomas and Agnes
Carvel Foundation, 2002 WL 32872391.  This injury therefore falls
outside the four-year statute of limitations for a civil RICO
claim.  Next, Ms. Carvel claims that the defendants, in particular
the Ross defendants, obstructed criminal investigations into fraud
related to Thomas and Agnes Carvel's estates by refusing to turn
over evidence or properly pay expert witnesses.  (Supp. Pleading,

¶¶ 124-26, 128-29, 131).  According to the pleadings, however, these activities occurred and were immediately known to the plaintiff by November of 2004 at the latest; any injury resulting from them thus fall outside the statute of limitations for her civil RICO claim.  Third, Ms. Carvel accuses the defendants of acquiescing in behavior intended to intimidate and harass Agnes Carvel and thereby tampering with a victim.  (Am. Compl., ¶¶ 178, 180).  Any such acts were necessarily both performed and known to the plaintiff by the time of Agnes Carvel's death in 1998; they therefore fall outside the statute of limitations for this claim. Finally, the plaintiff accuses the defendants of refusing to reimburse her legal fees in retaliation for her investigations into their participation in criminal fraud and ethical violations.  (Am. Compl., ¶ 153; Supp. Pleading, ¶ 38(b); Supp. Pleading Reply, ¶ 9). This claim also falls outside the statute of limitations.  With respect to the Ross and Blank Rome defendants, Ms. Carvel states that they accomplished their diversion of monies owed to her by entering into the 2001 stipulation, which she was informed of in 2003.  (Am. Compl., ¶¶ 21, 148; Supp. Pleading Reply, ¶ 9).  The McCarthy Fingar defendants were awarded legal fees by Justice Scarpino in 2003 and 2004; their failure to reimburse Ms. Carvel for those fees would have been apparent to her at that time, if not before.  (6/30/03 Decision at 7; 7/30/03 Order at 3; 12/29/04

78

Decision at 4).

Because none of Ms. Carvel's allegations of racketeering behavior are timely, her civil RICO claim should be dismissed.

### 4. State Statutory Claims

Finally, the plaintiff pleads two claims pursuant to New York statutory law: embezzlement and violations of New York State Judiciary Law § 487.

### a. Embezzlement

The plaintiff alleges that she was damaged in the amount of $18,000,000 by Mr. Ross' "collusion to embezzle corporate assets." (Supp. Pleading, ¶¶ 58, 118, 121). Embezzlement is prohibited by New York Penal Law § 155.05(2)(a); however, the plaintiff's claim fails for insufficient pleading. She has not stated any facts regarding the alleged embezzlement aside from her conclusory allegation that Mr. Ross "engaged" in "collusion" to commit it. Therefore, this cause of action should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### b. New York State Judiciary Law § 487

New York State Judiciary Law § 487 ("§ 487") creates a private right of action for any individual harmed by an attorney's act of "deceit or collusion," where that act was committed "with intent to deceive the court or any party." N.Y. Jud. Law § 487(1). For the attorney's misconduct to be actionable, her acts must have occurred

during the pendency of a court action while she was acting in her capacity as an attorney.  See O'Brien v. Alexander, 898 F. Supp. 162, 168-69 (S.D.N.Y. 1995) ("Since no lawsuit was pending when the alleged representations in question were made . . . plaintiff's claim must be dismissed, for section 487 by its terms applies only to statements made to the court or any party to a lawsuit."), aff'd, 101 F.3d 1479 (2d Cir. 1996); Northern Trust Bank of Florida/Sarasota, N.A. v. Coleman, 632 F. Supp. 648, 650 (S.D.N.Y. 1986) ("Section 487 is aimed at actions by an attorney in his or her role as an attorney.  The mere fact that a wrongdoer is an attorney is insufficient to impose liability for treble damages under section 487." (emphasis in the original)); Nardella v. Braff, 621 F. Supp. 1170, 1172 (S.D.N.Y. 1985) ("For a civil action to lie for violation of § 487 the deceit complained of must occur during the pendency of a court action.").  Because this cause of action sounds in malpractice, its statute of limitations is three years, accruing on the date of the alleged malpractice.  N.Y. CPLR § 214(6); Rafter v. Liddle, No. 05 Civ. 4296, 2006 WL 2255093, at *7, *11 (S.D.N.Y. Aug. 4, 2006), aff'd, 288 Fed. Appx. 768 (2d Cir. 2008).

In her motion papers, the plaintiff accuses all of the defendants of numerous violations of § 478; however, these allegations are both untimely and insufficiently pled.  The

plaintiff first alleges that the defendants have lied to this Court in their motions to dismiss. (Pl. Ross Opp. Memo., ¶¶ 102(4), 107; Pl. Blank Rome Opp. Memo., ¶ 100(4); Pl. McCarthy Fingar Opp. Memo., ¶ 85). This accusation is insufficiently pled -- Ms. Carvel fails to state which of the many statements made in defendants' various motions are false or what damage has been done to her as a result of those false statements. Some of the plaintiff's other allegations are based on events outside the statute of limitations for this action; for example, she alleges deceit by the Ross and Blank Rome defendants in signing the 2001 stipulation and in transferring savings bonds from Tennessee to New York in 2003. (Pl. Ross Opp. Memo., ¶¶ 101, 102(1); Pl. Blank Rome Opp. Memo., ¶¶ 99, 100(1)). Although the plaintiff provides a further laundry list of examples of the defendants' "deceit [and] collusion resulting in financial damages," no dates are ascribed to the acts, and the allegations are largely incoherent. (Pl. Ross Opp. Memo., ¶ 102; Pl. Blank Rome Opp. Memo., ¶ 100). To the extent that these accusations are duplicative of the plaintiff's legal malpractice and breach of fiduciary duty allegations, discussed above, they are untimely. To the extent that some of them may relate to events that occurred on or after January 2006, they are insufficiently pled and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

D. Leave to Amend

A pro se complaint "should not be dismissed 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"  Wilson v. Wilson-Polson, No. 09 Civ. 9810, 2010 WL 3733935, at *10 (S.D.N.Y. Sept. 23, 2010) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).  "'Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.'"  Lucente v. International Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)).  Here, the plaintiff has already been given two opportunities to amend and supplement her pleadings so as to state cognizable causes of action.  With the exception of one claim, she has failed to do so.  Therefore, where the Court dismisses the plaintiff's claims, it should do so with prejudice.

E. Filing Injunction

Where appropriate, "'[a] district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation.'"  Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986) (quoting Abdullah v. Gatto, 773 F.2d 487, 488 (2d Cir. 1985)).  One common way for courts to fulfill

this obligation is by issuing filing injunctions, which forbid individuals from filing lawsuits on particular topics or against particular defendants without the court's prior approval. See, e.g., Iwachiw v. New York State Department of Motor Vehicles, 396 F.3d 525, 528-29 (2d Cir. 2005). The Second Circuit has established five factors for courts to consider when determining whether to issue a filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Id. at 528 (quoting Safir, 792 F.2d at 24).

In their motion papers, the Blank Rome defendants ask the Court to "impose an injunction . . . to prevent further litigation against the Markewich Firms" by the plaintiff. (Supplemental Reply Memorandum of Law in Support of Defendants Eve Rachel Markewich, Blank Rome LLP and Markewich & Rosenstock LLP's Motion to Dismiss the Complaint at 10). Similar injunctions have already been entered against Ms. Carvel by the Honorable Shira A. Scheindlin and the Honorable Jed S. Rakoff of this Court. See Carvel v. Scarpino, No. 08 Civ. 3305, 2010 WL 5174392, at *10 (S.D.N.Y. Dec. 16, 2010);

Thomas and Agnes Carvel Foundation, 2010 WL 3303777, at *1. Judge Scheindlin's injunction applies to some of the defendants here, namely, Eve Markewich, Frank Streng, and Joel Aurnou. Carvel, 2010 WL 5174392, at *10. The reason for these injunctions is clear: Ms. Carvel has demonstrated a preference for filing repetitive, meritless pro se lawsuits against the Blank Rome defendants, undoubtedly at great expense to them and with no consideration for the Court's time and resources. Taking her motives at their most innocent, she appears to be driven by her conviction that the Blank Rome defendants are somehow responsible for losses of money and property that she believes are rightfully hers; however, Ms. Carvel has failed to successfully channel this belief into any semblance of a viable lawsuit despite numerous attempts. Her repeated insistence on filing lawsuits against the Blank Rome defendants has thus crossed the line into harassment and raises the inference "that she seeks to appropriate property to which she is not entitled and, in the alternative, to impose unjustified litigation burdens on those whom she deems responsible for the frustration of her efforts in this regard." Thomas and Agnes Carvel Foundation, 2010 WL 3303777, at *34. Therefore, to the extent that the Blank Rome defendants are not already protected by this district's prior filing injunctions, an injunction should be entered prohibiting Ms. Carvel from filing further complaints in this district against Ms.

84

Markewich, Mr. Bockstein, Mr. Valente, Blank Rome, or M&R, without the prior approval of the Court.

<u>Conclusion</u>

For the reasons set forth above, I recommend that the defendants' motions to dismiss be denied with respect to the plaintiff's claim for breach of contract against Joel Aurnou, Frank Streng, and McCarthy Fingar LLP; otherwise, I recommend that the motions be granted and the remainder of the plaintiff's claims be dismissed with prejudice. I also recommend the entry of a filing injunction against Ms. Carvel with respect to the Blank Rome defendants. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 1310 and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

_James C. Francis IV_

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

85

Dated:     New York, New York
           February 16, 2011


Copies mailed this date to:

Pamela Carvel
P.O. Box 460006
Fort Lauderdale, Florida 33346

Philip Touitou, Esq.
Concepcion A. Montoya, Esq.
Hinshaw & Culbertson LLP
780 Third Avenue
New York, New York 10017

Joseph J. Brophy, Esq.
Dina Aversano, Esq.
McCarthy Fingar
11 Martine Avenue, 12th Floor
White Plains, New York 10606

Jack D. Matza, Esq.
Leonard Ross
Ross & Matza
265 Sunrise Highway, Suite 65
Rockville Center, New York 11570